PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-3382
_____

MARY E. GLOVER, individually and
on behalf of other similarly situated former
and current homeowners in Pennsylvania,

Appellant

v.

FEDERAL DEPOSIT INSURANCE CORPORATION,
as receiver for Washington Mutual Bank, F.A.;
MARK J. UDREN; UDREN LAW OFFICES, P.C.;
WELLS FARGO HOME MORTGAGE;
GOLDMAN SACHS MORTGAGE COMPANY
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-08-cv-00990)
District Judge:  Honorable Donetta W. Ambrose
_____

Argued June 26, 2012

Before:  FISHER and GREENBERG, *Circuit Judges*,
and OLIVER,[*] *District Judge*.

(Filed: September 5, 2012)

Joseph Decker
David W. Ross
Babst, Calland, Clements & Zomnir
Two Gateway Center, 6th Floor
Pittsburgh, PA  15222

Ralph N. Feldman
Michael P. Malakoff (ARGUED)
Malakoff & Brady
437 Grant Street
200 Frick Building
Pittsburgh, PA  15219
        *Counsel for Appellant*

Jonathan J. Bart (ARGUED)
Wilentz, Goldman & Spitzer
Two Penn Center Plaza, Suite 910
Philadelphia, PA  19102
        *Counsel for Mark J. Udren and*
        *Udren Law Offices, P.C.*

---

[*] The Honorable Solomon Oliver, Jr., Chief Judge of the United States District Court for the Northern District of Ohio, sitting by designation.

Martin C. Bryce
Ballard Spahr
1735 Market Street, 51st Floor
Philadelphia, PA  19103

Elysa M. Dishman
Richard P. Sobiecki
David A. Super
Baker Botts
1299 Pennsylvania Avenue, N.W.
The Warner
Washington, DC  20004

K. Issac deVyver
Reed Smith
225 Fifth Avenue, Suite 1200
Pittsburgh, PA  15222
*Counsel for Federal Deposit
Insurance Corp.*

Perry A. Napolitano
James L. Rockney
K. Issac deVyver
Reed Smith
225 Fifth Avenue, Suite 1200
Pittsburgh, PA  15222
*Counsel for Wells Fargo Home
Mortgage*

R. Bruce Allensworth
Ryan M. Tosi

K&L Gates
One Lincoln Street
State Street Financial Center
Boston, MA  02111

Thomas E. Birsic
Emily B. Thomas
K&L Gates
210 Sixth Avenue
Pittsburgh, PA  15222
        *Counsel for Goldman Sachs*
        *Mortgage Company*

_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

Mary Glover ("Glover") appeals the District Court's dismissal of her claims against defendants Mark Udren and Udren Law Offices ("Udren" or "Udren Defendants") under the Fair Debt Collection Practices Act ("FDCPA") and Pennsylvania's Fair Credit Extension Uniformity Act ("FCEUA").  This appeal requires us to flesh out the notice requirements inherent in Federal Rule of Civil Procedure 15(c), as well as address novel issues of statutory interpretation pertaining to each statute.  We will affirm.

4

## I.  FACTUAL BACKGROUND[1]

In August of 2002, Glover entered into a mortgage loan transaction with Washington Mutual Bank ("WaMu"). After suffering injuries from an automobile accident in March of 2005, Glover fell behind on her mortgage and requested a "work-out" agreement to reduce her monthly payments. WaMu initially threatened to foreclose on the home, but subsequently agreed to postpone her payments until the request had been evaluated.  Eventually, on March 14, 2006, WaMu denied Glover's work-out request.

Around this time, Bill Murray, an attorney with Udren Law Offices, called Glover and informed her that she owed WaMu eleven missed mortgage payments, in addition to attorney's fees and costs, totaling approximately $3,397.28. On April 10, 2006, WaMu filed a Foreclosure Complaint against Glover in the Court of Common Pleas of Allegheny County, claiming $12,652.36 on the mortgage and threatening foreclosure if Glover did not pay.   The aggregate claim included $9,703.57 in principal, $633.71 in interest, $280.00 in anticipated court costs, $1,250.00 in anticipated attorney's fees, and various other fees.  Mark Udren of Udren Law Offices was counsel of record on WaMu's Foreclosure Complaint.  No further action took place following this initial filing.

---

[1] These facts are derived from Glover's original and amended pleadings, and assumed to be true in our review of a district court's grant of a Rule 12(b)(6) motion to dismiss. *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 452 (3d Cir. 2006).

After various communications between Glover and WaMu's assignee, Wells Fargo,[2] Glover entered into a Loan Modification Agreement ("Agreement" or "Modification Agreement") with Wells Fargo on January 4, 2008. The Agreement stipulated to unpaid principal in the amount of $12,152.02, increased Glover's monthly payment, and extended the repayment period by six years. Although Glover began making payments under the Agreement soon thereafter, the Foreclosure Complaint was not discontinued until November 25, 2009.

## II. PROCEDURAL HISTORY

On June 9, 2008, Glover filed a putative class-action Complaint in the Court of Common Pleas of Allegheny County against WaMu, Wells Fargo, and the Udren Defendants, alleging, *inter alia*, violations of the FCEUA, 73 Pa. Cons. Stat. Ann. § 2270.4(a), premised in turn on broadly alleged violations of the FDCPA, 15 U.S.C. § 1692 *et seq.* The case was removed to the United States District Court for the Western District of Pennsylvania on July 14, 2008, and motions to dismiss were filed by all defendants.

---

[2] WaMu assigned Glover's mortgage loan to Wells Fargo on November 15, 2006.

6

On October 23, 2008, the Federal Deposit Insurance Corporation ("FDIC"), in its capacity as receiver for WaMu,[3] filed a motion for a ninety-day stay for Glover to submit her claims against WaMu to the FDIC's mandatory claims review process. The motion was granted on October 24, 2008. On January 22, 2009, at the conclusion of the stay, the FDIC again moved to stay the proceedings pending completion of its review process. The motion was granted over Glover's objections on March 20, 2009, and reaffirmed on June 15, 2009. On September 24, 2009, the FDIC denied Glover's claims against WaMu.

Glover filed a First Amended Complaint on October 14, 2009, adding a count against the Udren Defendants for FDCPA violations arising out of the Udren Defendants' alleged failure to voluntarily discontinue the Foreclosure Complaint after Glover signed the Modification Agreement. (App. at 143a.) The Udren Defendants filed a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). On June 3, 2010, the Magistrate Judge issued a Revised Report recommending dismissal of the newly alleged FDCPA claim against the Udren Defendants with prejudice.

---

[3] The FDIC was appointed receiver for WaMu on September 25, 2008, by the Office of Thrift Supervision following a nine-day run on the bank's deposits. *See* Office of Thrift Supervision, OTS Fact Sheet on Washington Mutual Bank 3 (Sep. 25, 2008).

On June 9, 2010, Glover filed a Second Amended Complaint, adding Goldman Sachs as a defendant and restyling, among other claims, the FDCPA claim against the Udren Defendants. (App. at 290a-294a.) The Magistrate Judge vacated the Revised Report to allow filing of the Second Amended Complaint, but subsequently reinstated the Report. On August 18, 2010, adopting the Revised Report, the District Court entered an order dismissing the First Amended Complaint's FDCPA and FCEUA counts against the Udren Defendants without prejudice, thereby rendering the Second Amended Complaint the operative pleading.[4]

On October 22, 2010, the Udren Defendants filed a motion to dismiss the Second Amended Complaint. The District Court granted the motion as to the FDCPA claim,

---

[4] This was an adroit compromise by the District Court to allow the case to proceed in an orderly fashion, and bears some significance on appeal. Notably, the District Court's dismissal of the First Amended Complaint, though on the merits, was not a final, appealable order because it was without prejudice. *See Bethel v. McAllister Bros., Inc.*, 81 F.3d 376, 381 (3d Cir. 1996) (observing that "an order dismissing a complaint without prejudice is ordinarily not appealable"). Moreover, "an amended complaint, once filed, normally supersedes the antecedent complaint." *Connectu LLC v. Zuckerberg*, 522 F.3d 82, 91 (1st Cir. 2008). Thus, although we are free to affirm on any ground supported by the record, *Hughes v. Long*, 242 F.3d 121, 122 n.1 (3d Cir. 2001), the District Court's August 18, 2010 order dismissing the First Amended Complaint is not before us on appeal.

finding that the Amended Complaint was not filed within the FDCPA's one-year statute of limitations, 15 U.S.C. § 1692k(d), and did not relate back to the timely filed original Complaint under Federal Rule of Civil Procedure 15(c)(1)(B). The District Court also dismissed Glover's FCEUA claims against the Udren Defendants, finding that the Udren Defendants were not "debt collectors" under the FCEUA because Glover's mortgage was a purchase money mortgage, and hence excluded from the FCEUA's definition of "debt." *See* 73 Pa. Cons. Stat. Ann. § 2270.3. Glover timely appealed.

## III. JURISDICTION AND STANDARD OF REVIEW

The District Court exercised jurisdiction over Glover's FDCPA claims under 15 U.S.C. § 1692k(d) and, the matter in controversy exceeding $5 million, over the putative class action under 28 U.S.C. § 1332(d)(2). The District Court exercised supplemental jurisdiction over Glover's FCEUA

9

claims under 28 U.S.C. § 1367. We have appellate jurisdiction under 28 U.S.C. § 1291.[5]

We exercise plenary review of a district court's interpretation and application of Rule 15(c), *Lundy v. Adamar of N.J., Inc.*, 34 F.3d 1173, 1177 (3d Cir. 1994), and the dismissal of a claim based on the statute of limitations. *Lake v. Arnold*, 232 F.3d 360, 365-66 (3d Cir. 2000). We exercise plenary review over a district court's dismissal for failure to state a claim under Rule 12(b)(6), applying the same standard as the district court. *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 452 (3d Cir. 2006). We must accept all well-pled allegations in the complaint as true and ask whether, under any reasonable interpretation, the plaintiff states a claim that would entitle her to relief. *Id.* Our review of a district court's interpretation of a state statute is plenary. *Moody's v. Sec. Pac. Bus. Credit, Inc.*, 971 F.2d 1056, 1063 (3d Cir. 1992).

---

[5] Because this is an appeal from an order dismissing fewer than all of Glover's claims against two of the various defendants, the parties to this appeal were required to obtain certification under Federal Rule of Civil Procedure 54(b) that the District Court's order was final and appealable. To satisfy Rule 54(b), the District Court was required to make an express determination that there was "no just reason for delay." *Elliot v. Archdiocese of N.Y.*, 682 F.3d 213, 229 (3d Cir. 2012). Although the initial Rule 54(b) certification was perhaps lacking in this regard, the parties obtained a supplemental order on July 25, 2012, that satisfies this jurisdictional prerequisite.

## IV.  ANALYSIS

Glover appeals the District Court's dismissal of her FDCPA and FCEUA claims against the Udren Defendants. We address each claim in turn.

### A.  FAIR DEBT COLLECTION PRACTICES ACT

The District Court treated the FDCPA claim against the Udren Defendants as accruing on January 4, 2008, the date on which the Modification Agreement was signed. Although the FDCPA imposes a one-year statute of limitations from the date of the alleged violation, Glover filed her First Amended Complaint, in which she first presented this claim, on October 14, 2009. Glover argued that the claim was timely because it related back to her original Complaint under Federal Rule of Civil Procedure 15(c)(1)(B), or, in the alternative, because the statute of limitations was tolled during the FDIC's mandatory review of her claims against WaMu. The District Court found that Glover's First Amended Complaint bore "absolutely no connection" to her original claims against the Udren Defendants, and therefore rejected Glover's relation back argument. And after "generously" accounting for the stays issued in response to the FDIC claims review process, the District Court calculated that the statute of limitations expired on October 9, 2009, five days before Glover filed her First Amended Complaint.

On appeal, Glover submits that the District Court erred in finding that her amended FDCPA claim against the Udren Defendants did not relate back to her original Complaint. She also argues that the District Court erred in calculating the

11

statute of limitations by using the incorrect accrual date for her claim and by failing to toll the statute of limitations for the proper length of time.

### *1. Relation Back*

Glover initially contends that the District Court erred in finding that her amended FDCPA claim against the Udren Defendants did not relate back to her original Complaint. Despite the presence of overlapping facts between the two pleadings, we reach the same result because Glover's original pleading failed to give fair notice to the Udren Defendants of her subsequently amended claim.

Under Federal Rule of Civil Procedure 15(c)(1)(B), an amendment to a pleading relates back to the date of the original pleading where "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Relation back is structured "to balance the interests of the defendant protected by the statute of limitations with the preference expressed in the Federal Rules of Civil Procedure in general, and Rule 15 in particular, for resolving disputes on their merits." *Krupski v. Costa Crociere S.p.A.*, 130 S. Ct. 2485, 2494 (2010). Where an amendment relates back, Rule 15(c) allows a plaintiff to sidestep an otherwise-applicable statute of limitations, thereby permitting resolution of a claim on the merits, as opposed to a technicality. *See id.* At the same time, Rule 15(c) endeavors to preserve the important policies served by the statute of limitations – most notably, protection against the prejudice of having to defend against a stale claim, as well

12

as society's general interest in security and stability – by requiring "that the already commenced action sufficiently embraces the amended claims." *Nelson v. Cnty. of Allegheny*, 60 F.3d 1010, 1014-15 (3d Cir. 1995).

As we have explained, application of Rule 15(c)(1)(B) normally entails a "search for a common core of operative facts in the two pleadings." *Bensel v. Allied Pilots Ass'n*, 387 F.3d 298, 310 (3d Cir. 2004). Importantly, however, Rule 15(c) is not merely an "identity of transaction test," such as the rules governing joinder of claims or parties. 6A Charles Allen Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1497 (2010). Though not expressly stated, it is well-established that the touchstone for relation back is fair notice, because Rule 15(c) is premised on the theory that "a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide." *Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 149 n.3 (1984); *Bensel*, 387 F.3d at 310. Thus, only where the opposing party is given "fair notice of the general fact situation and the legal theory upon which the amending party proceeds" will relation back be allowed. *Bensel*, 387 F.3d at 310. Conversely, amendments "that significantly alter the nature of a proceeding by injecting new and unanticipated claims are treated far more cautiously." *United States v. Hicks*, 283 F.3d 380, 388 (D.C. Cir. 2002).

In *Bensel*, we approved relation back of amendments that "restate the original claim with greater particularity or amplify the factual circumstances surrounding the pertinent conduct." 387 F.3d at 310. In that case, the plaintiff's broad

13

allegations of breach of a duty of fair representation in the original complaint easily encompassed the "more particularized claims" alleged in the amended pleading, and the defendant was therefore "unquestionably on notice that it would be held liable for every possible breach of its fair representation duty occasioned by the outlined facts." *Id.* Thus, the facts in *Bensel* fit squarely within the contours of Rule 15(c)(1)(B), and gave us no opportunity to speak to the limits imposed by the notice requirement.

We do so now: where the original pleading does not give a defendant "fair notice of what the plaintiff's [amended] claim is and the grounds upon which it rests," the purpose of the statute of limitations has not been satisfied and it is "not an original pleading that [can] be rehabilitated by invoking Rule 15(c)." *Baldwin*, 466 U.S. at 149 n.3 (internal marks and citation omitted); *see* 6A Wright et al., Federal Practice & Procedure § 1497 ("Although not expressly mentioned in the rule, . . . courts also inquire into whether the opposing party has been put on notice regarding the claim or defense raised by the amended pleading. Only if the pleading has performed that function . . . will the amendment be allowed to relate back . . . ."). Put another way, the underlying question for a Rule 15(c) analysis is "whether the *original* complaint adequately notified the defendants of the basis for liability the plaintiffs would later advance in the amended complaint." *Meijer, Inc. v. Biovail Corp.*, 533 F.3d 857, 866 (D.C. Cir. 2008) (emphasis added); *see Wilson v. Fairchild Republic Co.*, 143 F.3d 733, 738 (2d Cir. 1998) ("The pertinent inquiry, in this respect, is whether the original complaint gave the defendant fair notice of the newly alleged claims." (citing

14

*Baldwin*, 466 U.S. at 149. n.3)), *overruled on other grounds by Slayton v. Am. Express Co.*, 460 F.3d 215, 227-28 (2d Cir. 2006) (adopting *de novo* standard of review for Rule 15(c)).

Here, we cannot agree that Glover's original Complaint adequately notified the Udren Defendants of the basis for liability asserted against them in the amended FDCPA claim because it did not arise from the factual occurrences which, fairly construed, implicated the Udren Defendants in her first pleading. Glover's *amended* FDCPA claim specifically averred that the Udren Defendants violated the FDCPA by "failing to withdraw the Foreclosure Complaint against Ms. Glover" after Glover signed the Modification Agreement, because the Foreclosure Complaint constituted a "continuing representation" that Glover had defaulted on and had not yet paid her mortgage debt. (App. at 257a-58a, 290a-93a (Amend. Compl. ¶¶ 57-58, 179-90).) Glover's *original* Complaint, by comparison, alleged no such conduct by the Udren Defendants. In fact, amongst the plethora of allegations made in Glover's 40-page and 139-paragraph Complaint, Glover accused the Udren Defendants only of making a debt-collection phone call and of filing a Foreclosure Complaint demanding payment of purportedly unlawful attorney's fees. Both of these "communications" or "representations" would constitute violations of the FDCPA that are factually and legally distinct from each other and from the amended claim, *see* 15 U.S.C. § 1692e (prohibiting "any false, deceptive or misleading representation or means in connection with the collection of any debt"), and could neither offer "fair notice of the general fact situation" nor of the "legal theory" upon which Glover 's amended FDCPA

15

claim relied. *Bensel*, 387 F.3d at 310. In other words, Glover's amended FDCPA claim differed in "time and type" from the claims earlier alleged against the Udren Defendants. *See Mayle v. Felix*, 545 U.S. 644, 657-59 (2005); *Oja v. U.S. Army Corps of Eng'rs*, 440 F.3d 1122, 1134 (9th Cir. 2006) (adding allegation of publication of private information in violation of Privacy Act did not relate back to earlier complaint alleging publication of same information, but at a different time and from a different URL address).

We acknowledge, as we must, that the District Court arguably mischaracterized the relationship between Glover's original and amended FDCPA claims as bearing "absolutely no connection." Buried amidst Glover's excruciatingly and often excessively detailed pleading (so much so that it apparently evaded the eyes of the District Court), and presented almost as an afterthought, Paragraph 53 averred that:

> "Although the monetary claims in Washington Mutual's Foreclosure Complaint have now long been resolved as a result of Wells Fargo's and Ms. Glover's January 4, 2008 loan modification, *neither Washington Mutual nor Wells Fargo have withdrawn that Complaint.* Thus, the now existing public record shows that Washington Mutual is pursuing a claim for well over $12,652.36 that, according to Wells Fargo's January []4, 2008 agreement is neither due nor owing. This again is a form of 'double billing.'"

16

(App. at 57a-58a (Compl. ¶ 53)) (emphasis added). As Glover observes, Paragraph 53 of the original Complaint referenced the Modification Agreement and the Foreclosure Complaint, both of which pertain to her amended FDCPA claim against the Udren Defendants. Yet factual overlap alone is not enough, because the original complaint must have given fair notice of the amended claim to qualify for relation back under Rule 15(c). *See*, *e.g.*, *Mayle*, 545 U.S. at 658-59 (listing cases in which amended claim did not relate back for lack of fair notice despite presence of overlapping facts); *Meijer*, 533 F.3d at 866 ("Although the original and amended claims have some elements and facts in common, the whole thrust of the amendments is to fault [defendants], and to fault them for conduct different from that identified in the original complaint.").

Fair notice was lacking here. Just as Rule 8(a) requires that a complaint "be presented with clarity sufficient to avoid requiring a district court or opposing party to forever sift through its pages in search" of the nature of the plaintiff's claim, *Jennings v. Emry*, 910 F.2d 1434, 1436 (7th Cir. 1990), Rule 15(c) cannot save a complaint that obscures the factual predicate and legal theory of the amended claim. *See Bensel*, 387 F.3d at 310; *Nelson*, 60 F.3d at 1014-15 (relation back does not permit a plaintiff to perform an "end-run" around the statute of limitations). Pleadings are not like magic tricks, where a plaintiff can hide a claim with one hand, only to pull it from her hat with the other. Here, the facts alleged in Paragraph 53 appeared entirely peripheral to the Complaint's central allegations concerning WaMu and Wells Fargo's direct communications with Glover and, even under the most

17

generous reading, gave no suggestion that the Udren Defendants were culpable in any way for the conduct attributed to WaMu or Wells Fargo. *Cf.* Fed. R. Civ. P. 15(c)(1)(C) (requiring satisfaction of Rule 15(c)(1)(B) and notice to the new defendant for relation back where "the amendment changes the party . . . against whom a claim is asserted"); *Nelson*, 60 F.3d at 1014-15 (discussing importance of notice requirement in Rule 15(c)(1)(C)).

Nor did Glover's sweeping allegation in Count IV of the original Complaint – that "Debt collectors that make false representations about the 'character, amount or legal status of any debt' violate the FDCPA, § 1692e(2)(A)," (App. at 72a (Compl. ¶ 110)) – provide clarity. The facts alleged in Count IV described only Wells Fargo's purportedly deficient notices and letters to Glover, and Glover's wholesale incorporation of the previous 106 paragraphs illuminated neither the acts that constituted "false representations" nor the defendants liable for those acts. The absence of any limit in the application of Rule 15(c) to such expansive pleadings "could cause defendants' liability to increase geometrically and their defensive strategy to become far more complex long after the statute of limitations had run." *Nelson*, 60 F.3d at 1015 (quoting *Leachman v. Beech Aircraft Corp.*, 694 F.2d 1301, 1309 (D.C. Cir. 1982)).

Perhaps, by making several inferential leaps, the Udren Defendants might have guessed that, hidden between the factual allegations and the unmoored recitation of the FDCPA, a claim might be asserted against them for the conduct attributed to Wells Fargo and WaMu. But the Federal Rules do not place the onus on the defendant to piece

together the disparate fragments of a disjointed complaint to distill the essence of a claim. Courts frown on "pleading by means of obfuscation," *Jennings*, 910 F.2d at 1436, because a pleading that is "prolix and/or confusing makes it difficult for the defendant to file a responsive pleading and makes it difficult for the trial court to conduct orderly litigation." *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 776 (7th Cir. 1994). Glover could have given some clue in her original pleading that the Udren Defendants were complicit in failing to discontinue the Foreclosure Complaint, and therefore liable for that false representation. She did not. "Although the relation-back rule ameliorates the effect of statutes of limitations, it does not save the claims of complainants who have sat on their rights." *Nelson*, 60 F.3d at 1015 (internal citation omitted). The fair notice required by Rule 15(c) was lacking, and accordingly, we agree with the District Court that Glover's amended FDCPA claim against the Udren Defendants does not qualify for relation back.

### 2. *Statute of Limitations*

Having rejected Glover's relation back argument, we turn to her arguments concerning the District Court's calculation of timeliness. A claim under the FDCPA "may be brought . . . within one year from the date on which the violation occurs." 15 U.S.C. § 1962k(d). Glover first contends that the District Court erred in finding that her claim accrued on the date the Modification Agreement was signed, as opposed to the date that the Udren Defendants learned of the existence of the Modification Agreement. She then argues that the District Court improperly calculated the

19

running of the statute of limitations during the period that her claims against WaMu were being reviewed by the FDIC, pursuant to the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), Pub. L. No. 101-73, 103 Stat. 183 (incorporated in various United States Code provisions). As did the District Court, we reject Glover's arguments.

### a. Accrual of the Claim

We are not persuaded that the Udren Defendants' alleged violation of the FDCPA occurred only after learning of the Modification Agreement. The FDCPA is generally characterized as a "strict liability" statute because "it imposes liability without proof of an intentional violation." *Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 368 & n.7 (3d Cir. 2011); *accord Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010) ("To recover damages under the FDCPA, a consumer does not need to show intentional conduct on the part of the debt collector."). Section 1692e(2)(A), which makes it unlawful for a debt collector, "in connection with the collection of any debt," to make a "false representation" about the "character, amount or legal status of any debt," is no different. The language of this provision creates a straightforward, objective standard. Nothing suggests that an allowance is to be made for a defendant's lack of knowledge or intent. And notably, recognizing the accrual of a claim only upon the intentional violation of the FDPCA would undermine the "deterrent effect of strict liability," *Allen*, 629 F.3d at 368, despite our obligation to construe the statute broadly to effectuate its remedial purpose. *See Brown*, 464 F.3d at 453.

20

In this case, Glover characterized her claim as a "false representation" that she had not paid her debt, when, in fact, the Modification Agreement and her subsequent payments had taken her debt out of default. The representation that Glover had not paid her debt was false, regardless of whether the Udren Defendants knew it to be so. And although Glover suggests that her claim was for a "continuing representation," as opposed to a one-time communication, at no point does the FDCPA make such a distinction.

Glover relies on the language of the FDCPA's "bona fide error" defense in asserting that the violation must be intentional, but her argument is misplaced. Under the bona fide error defense, "[a] debt collector may not be held liable . . . if the debt collector shows . . . that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c); *see Beck v. Maximus, Inc.*, 457 F.3d 291, 297-98 (3d Cir. 2006) (listing elements of bona fide error defense). The text of § 1692k(c) cuts against the very interpretation that Glover offers: by immunizing a debt collector for an unintentional violation where reasonable error-avoidance procedures have been employed, § 1692k(c) indicates that a violation of the FDCPA does not have to be intentional in the first place. An interpretation of the FDCPA that required an intentional violation would, of course, render this language pure surplusage, a path which we decline to take. *See*, *e.g.*, *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001).

Although, in certain situations, some courts have determined that the FDCPA's statute of limitations begins to

21

run on the date of "the debt collector's 'last opportunity to comply with the Act,'" *Naas v. Stolman*, 130 F.3d 892, 893 (9th Cir. 1997) (brackets omitted) (quoting *Mattson v. U.S. West Commc'ns, Inc.*, 967 F.2d 259, 261 (8th Cir. 1992)), the premise for such decisions is lacking here. An accrual date based on the moment the violation becomes intentional (which Glover defines by reference to the bona fide error defense) fails to provide "a date which may be 'fixed by objective and visible standards,' one which is easy to determine, ascertainable by both parties, and may be easily applied." *Mattson*, 967 F.2d at 261. The question of when a defendant learns that his conduct violates the FDCPA, in spite of "procedures reasonably adapted to avoid such error," 15 U.S.C. § 1692k(c), requires qualitative assessments of whether a procedure is "reasonably adapted." And if a defendant lacks such a defense, a court would have to make a subjective estimate of when the defendant *should have* learned of the violation. Accordingly, we agree with the District Court that Glover's claim arose on the date that the Modification Agreement was signed and the representation about her debt became objectively false: January 4, 2008.[6]

---

[6] Thus, it is of no moment that the date that the Udren Defendants purportedly learned of the Modification Agreement, March 3, 2008, was absent from the record when the District Court rendered its decision.

### b. Tolling Under FIRREA's Mandatory Exhaustion Requirement

The Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub. L. No. 101-73, 103 Stat. 183 (incorporated in various United States Code provisions), imposes exhaustion requirements on claims asserted against a failed financial institution for which the FDIC is appointed receiver. *See FDIC v. Shain, Schaffer & Rafanello*, 944 F.2d 129, 131-32 (3d Cir. 1991); *Marquis v. FDIC*, 965 F.2d 1148, 1151-55 (1st Cir. 1992). Under FIRREA, the FDIC, in its capacity as receiver, "may resolve claims against the failed institution." *Shain*, 944 F.2d at 132 (citing 12 U.S.C. § 1821(d)(4) & (5)). The FDIC's review of a claim presents a jurisdictional bar to federal courts, because "Congress expressly withdrew jurisdiction from all courts over any claim to a failed bank's assets that are made outside" the FDIC claims process. *Id.* (citing 12 U.S.C. § 1821(d)(6), (d)(13)(D)). Consequently, "in order to obtain jurisdiction to bring a claim in federal court, one must exhaust administrative remedies by submitting the claim to the receiver in accordance with the administrative scheme for adjudicating claims detailed in § 1821(d)." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. City Sav., F.S.B.*, 28 F.3d 376, 383 (3d Cir. 1994).

Based on this exhaustion requirement, Glover argues that the District Court lacked jurisdiction over the litigation for the entire period during which the FDIC, as receiver for WaMu, had jurisdiction to review her claims against the bank. In calculating the timeliness of Glover's claim, however, the District Court simply added up the days during which the

23

Court was deprived of jurisdiction due to various non-contiguous stays and then added those days to the FDCPA's one-year limitations period, effectively extending the limitations period by 200 days.[7]  Glover therefore contends that the District Court should also have included a period between the stays (from January 24, 2009 until March 20, 2009) during which the FDIC's review process was purportedly in motion.

Although Glover does not frame it as such, we understand her jurisdictional argument as an attempt to justify the application of equitable tolling.  The doctrine of equitable tolling "can rescue a claim otherwise barred as untimely by a statute of limitations [only] when a plaintiff has been prevented from filing in a timely manner due to sufficiently inequitable circumstances." *Santos ex rel. Beato v. United States*, 559 F.3d 189, 197 (3d Cir. 2009) (citation and internal quotation marks omitted).  Equitable tolling is extended only sparingly, in circumstances "(1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." *Id.*  Although tolling the statute of

---

[7] FIRREA permits a receiver to request an initial 90-day stay under 12 U.S.C. § 1821(d)(12)(A), and requires that a determination to allow or disallow a claim be made within the 180-day period after the filing of the claim with the receiver under 12 U.S.C. § 1821(d)(5)(A)(i).  *See Marquis*, 965 F.2d at 1151-55.

limitations for the requested period would be more than adequate to render her FDCPA claim timely, Glover is not entitled to equitable tolling by virtue of FIRREA's exhaustion requirement.

First, we need not venture into FIRREA's intricate statutory web to determine that Glover's claim against the Udren Defendants was not subject to a jurisdictional bar. To the extent that it pertains to Glover's suit, FIRREA's jurisdictional bar governs *solely* "(1) claims for payment from the assets of [the failed bank], (2) actions for payment from those assets and (3) actions for a determination of rights with respect to those assets." *Rosa v. Resolution Trust Corp.*, 938 F.2d 383, 393 (3d Cir. 1991); 12 U.S.C. § 1821(d)(13)(D)(i). Glover's claim against the Udren Defendants was not a claim against a failed bank, to obtain payment from bank assets, or for a determination of rights with respect to those assets. She was not obligated to submit the claim to the FDIC, nor obligated to sit on her hands while the FDIC processed her claims against WaMu. We reject this argument accordingly.

Second, even if we were to apply FIRREA's jurisdictional bar to these claims, we agree with the First Circuit's well-reasoned opinion in *Marquis* that when a bank fails *after* a claim is filed in federal court, the jurisdictional bar does not apply. The text of 12 U.S.C. § 1821(d), *Marquis* held, "show[s] Congress'[s] discernible intent to preserve jurisdiction over civil actions filed against failed institutions prior to the FDIC's appointment as receiver." 965 F.2d at 1153; *see*, *e.g.*, 12 U.S.C. § 1821(d)(5)(F)(ii) ("the filing of a claim with the receiver shall not prejudice any right of the claimant to *continue* any action which was filed before the

25

appointment of the receiver" (emphasis added)). In those circumstances, a district court may stay the proceedings upon request "so as to permit exhaustion of the mandatory administrative claims review process," but retains jurisdiction over the litigation, to resume if needed at the conclusion of the stay. *Marquis*, 965 F.2d at 1155; *see* 12 U.S.C. § 1821(d)(12)(A) ("After the appointment of [a receiver,] the . . . receiver may request a stay . . . ."). Glover filed her original Complaint in state court on June 9, 2008, and it was removed to the District Court on July 14, 2008. The FDIC was appointed receiver for WaMu on September 25, 2008. Because the FDIC's receivership began *after* the case was removed to the District Court, the essence of the jurisdictional argument rings hollow.

Although there may have been some time periods that Glover was prevented from filing her FDCPA claims against the Udren Defendants because proceedings were stayed, there is no reason why the statute of limitations should be tolled by more than 200 days. Thus, we find no error in the District Court's determination that Glover's FDCPA claim was not timely.

B. FAIR CREDIT EXTENSION UNIFORMITY ACT

The FCEUA, 73 Pa. Cons. Stat. Ann. § 2270.1 *et seq.*, prohibits "unfair methods of competition and unfair or deceptive acts or practices with regard to the collection of debts," *id.* § 2270.2, including any violation of the FDCPA by a "debt collector." *Id.* § 2270.4(a). Though premised on the same alleged FDCPA violation, the FCEUA imposes a two-year statute of limitations under which Glover's claim would

26

have been timely. *Id.* § 2270.5(b). Nevertheless, the District Court found that the Udren Defendants were not "debt collectors," and consequently that Glover failed to state a FCEUA claim against the Udren Defendants.

We will affirm the District Court, though on different grounds. There can be no dispute that, based on the facts alleged in the pleadings, the Udren Defendants qualify as "debt collectors" under the FDCPA.[8] Whether a defendant is

---

[8] A "debt collector" under the FDCPA includes "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Before the filing of the Foreclosure Complaint, an associate at Udren Law Offices called Glover requesting immediate payment on her mortgage debt. Furthermore, attorneys that "regularly, through litigation, tr[y] to collect consumer debts" are considered debt collectors under that Act. *Heintz v. Jenkins*, 514 U.S. 291, 292 (1995); *FTC v. Check Investors, Inc.*, 502 F.3d 159, 172 n.11 (3d Cir. 2007). In filing the Foreclosure Complaint against Glover, the Udren Defendants self-identified as a "debt collector" and confirmed that the Foreclosure Complaint was "an attempt to collect a debt," and Glover's pleadings allege that the Udren Defendants engaged in such litigation as a common debt collection practice. We therefore have no hesitation in concluding that the Udren Defendants meet the FDCPA definition of "debt collector."

27

a "debt collector" under the FCEUA, however, is somewhat more complicated, because rather than adopting the FDCPA's definition of "debt collector," the FCEUA provides its own. Under the FCEUA, a "debt collector" is "[a] person not a creditor . . . engaging or aiding directly or indirectly in collecting a debt . . . ." *Id.* § 2270.3. The FCEUA includes within this definition "[a]n attorney, whenever such attorney attempts to collect a debt, as herein defined, except in connection with the filing or service of pleadings or discovery or the prosecution of a lawsuit to reduce a debt to judgment." *Id.* § 2270.3(3)(iii). This is narrower than the FDCPA definition of "debt collector." *See FTC v. Check Investors, Inc.*, 502 F.3d 159, 172 n.11 (3d Cir. 2007) ("Attorneys who regularly engage in debt collection or debt collection litigation are covered by the FDCPA, and their litigation activities must comply with the requirements of the FDCPA."). Thus, even where a defendant ostensibly falls within the FDCPA's definition of "debt collector," such defendant may not be liable under the FCEUA's narrower scope.[9]

---

[9] Glover suggests that we should not read the FCEUA's definition of "debt collector" to exclude from liability conduct prohibited by the FDCPA because doing so would contravene the purpose of incorporating the federal statute. However, our obligation is not to redraft statutes as we might think they should be crafted, but to give meaning to each provision as it is presently written. 1 Pa. Cons. Stat. Ann. § 1921(a). In doing so, we adhere to the plain meaning of the text. *Id.* § 1921(b). Rather than stating that the

28

The Udren Defendants' activities were clearly "in connection with . . . the prosecution of a lawsuit to reduce a debt to judgment," and so the Udren Defendants are not "debt collectors" under the FCEUA. *See Silva v. MidAtlantic Mgmt. Corp.*, 277 F. Supp. 2d 460, 466 (E.D. Pa. 2003). We therefore agree with the District Court that Glover's FCEUA claims against the Udren Defendants must fail.

## V. CONCLUSION

For the foregoing reasons, we will affirm the District Court's dismissal of Glover's FDCPA and FCEUA claims against the Udren Defendants.

---

FCEUA incorporates "any violation of the FDCPA," the FCEUA states that such a violation must be committed by a "debt collector," for which it provides a definition that departs from that contained in the FDCPA. We will respect this legislative choice.