ALD-202                                                                **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-3197
_____

NATHANIEL L. ADDERLY,
Appellant

v.

CO STOFKO; LT. DOMAGAUER; CO WHITE; CO KONDRASKI; CO KOTZ;
LT. WILDE; CO LYNCH; LARSON, Deputy Warden; WARDEN PIAZZA;
LT. AMEEN; CAPT. ORSWICK; CO WICHT; CO BLEICH; RON, Supervising
Therapist Ron "Doe"; KAWALSKI, Hearing Examiner
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 3-12-cv-01546)
District Judge:  Honorable Edwin M. Kosik
_____

Submitted for Possible Dismissal for Jurisdictional Defect, Possible Dismissal Pursuant
to 28 U.S.C. § 1915(e)(2)(B), or Summary Action Under Third Circuit LAR 27.4 and
I.O.P. 10.6
March 31, 2016

Before:  AMBRO, SHWARTZ and GREENBERG, <u>Circuit</u> <u>Judges</u>

(Opinion filed: April 5, 2016)
_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

_____

PER CURIAM

Nathaniel Adderly, an inmate at SCI Houtzdale proceeding pro se and in forma pauperis, appeals from the District Court's order dismissing his civil-rights complaint without prejudice for the failure to state a claim. Because the appeal presents no substantial question, we will summarily affirm. See 3d Cir. L.A.R. 27.4; I.O.P. 10.6.

I.

Adderly filed a complaint in the District Court alleging that the defendants violated his constitutional rights in numerous ways during his time in custody at Luzerne County Correctional Facility ("LCCF"). The complaint contains 544 paragraphs, plus an additional 35 pages of exhibits. The first main set of allegations concerns Adderly's assignment to Protective Custody ("PC") status, which included a distinctive yellow uniform. Adderly alleged that he found the yellow uniform stigmatizing because other inmates generally knew that such uniforms were worn by inmates charged with crimes of a sexual nature. Adderly also alleged that his PC status set restrictions and denied access to amenities to an extent that amounted to a constitutional violation.

The second main set of allegations concerns a series of retaliation and conspiracy claims. Adderly alleged that he unsuccessfully grieved his PC status, and that thereafter he endured numerous actions and incidents (which are set out in over 400 paragraphs in the complaint) that he contended were in retaliation for filing that grievance. In

2

particular, Adderly alleged that he was unjustifiably placed in what he contended was punitive Restrictive Housing Unit ("RHU") confinement, and that time and again over the next several months other disciplinary charges were brought against Adderly that he alleged were based on false or distorted facts. Those included charges for being disruptive and disobeying an oral order, making an aggressive move at a hallway monitor, possessing an unknown substance, striking another inmate, hoarding materials, use of abusive or obscene language, threatening a prison guard, spitting on a prison guard, and other violations. Adderly also alleged that the defendants conspired to rig the misconduct hearings and grievance proceedings related to all of these incidents. Adderly alleged further that he suffered other adverse actions in retaliation for his grievance concerning his PC status, such as humiliating strip searches, the denial of access to hygiene products and clean uniforms, rough handling when cuffed and tethered (with prison guards jerking him around by the cuffs), and the destruction or confiscation of personal property (including legal materials).

The defendants moved to dismiss the complaint for the failure to state a claim upon which relief could be granted, and for the failure to make a short and plain statement of each claim. After briefing on the motion to dismiss, Adderly filed a motion to supplement the complaint to add additional allegations against some of the defendants. The District Court then dismissed Adderly's complaint, but granted Adderly 20 days to file an amended complaint. In its memorandum and separate order, the District Court set

3

forth the standards that Adderly should seek to meet in drafting an amended complaint. As Adderly would have an opportunity to file an amended complaint, the District Court denied the motion to supplement as moot.

Instead of filing an amended complaint, Adderly filed a motion for reconsideration within two weeks of the District Court's dismissal of his complaint. The District Court declined to reconsider its dismissal order, but again granted Adderly 20 days to file an amended complaint. Rather than take advantage of this second chance to revise his complaint, Adderly filed a notice of appeal within 30 days of the District Court's order denying his motion for reconsideration.

## II.

First, we must consider our jurisdiction to hear the appeal because Adderly's decision to appeal from a dismissal without prejudice presents a potential jurisdictional issue. We have jurisdiction over appeals from final decisions of the district courts. See 28 U.S.C. § 1291. "Generally, an order which dismisses a complaint without prejudice is neither final nor appealable because the deficiency may be corrected by the plaintiff without affecting the cause of action." Borelli v. City of Reading, 532 F.2d 950, 951 (3d Cir. 1976) (per curiam). "Only if the plaintiff cannot amend or declares his intention to stand on his complaint does the order become final and appealable." Id. at 951-52. Although there is no "clear rule for determining when a party has elected to stand on his or her complaint," Hagan v. Rogers, 570 F.3d 146, 151 (3d Cir. 2009), we have exercised

4

jurisdiction when a plaintiff fails to amend within the time provided by the District Court, see Batoff v. State Farm Ins. Co., 977 F.2d 848, 851 n.5 (3d Cir. 1992).

Here, we will infer Adderly's intention to stand on his complaint. The District Court dismissed Adderly's complaint and granted Adderly 20 days to amend it. Instead of filing an amended complaint, Adderly filed a motion for reconsideration of the dismissal of his complaint, and then filed a notice of appeal after reconsideration was denied. As a result, the District Court's order is a final, appealable order. See id.

## III.

We exercise plenary review over a district court's decision to grant a Rule 12(b)(6) motion to dismiss. Fleisher v. Standard Ins. Co., 679 F.3d 116, 120 (3d Cir. 2012). "[I]n deciding a motion to dismiss, all well-pleaded allegations . . . must be taken as true and interpreted in the light most favorable to the plaintiffs, and all inferences must be drawn in favor of them." McTernan v. City of York, 577 F.3d 521, 526 (3d Cir. 2009) (quotation marks omitted). To withstand a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim to relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. We construe Adderly's pro se pleadings liberally, see Haines v. Kerner, 404 U.S. 519, 520 (1972), and

5

we may affirm the District Court's judgment on any basis supported by the record, see Murray v. Bledsoe, 650 F.3d 246, 247 (3d Cir. 2011) (per curiam).

There is no substantial question that the District Court did not err in dismissing Adderly's complaint as drafted. The complaint fails to set out "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Nor is each allegation set out in a "simple, concise, and direct" way. See Fed. R. Civ. P. 8(d)(1). Instead, the complaint is rife with irrelevant facts that, even if accepted as true, do not satisfy the elements of any of the causes of action that Adderly seeks to bring. A complaint must "'be presented with clarity sufficient to avoid requiring a district court or opposing party to forever sift through its pages in search' of the nature of the plaintiff's claim[.]" Glover v. F.D.I.C., 698 F.3d 139, 147 (3d Cir. 2012) (quoting Jennings v. Emry, 910 F.2d 1434, 1436 (7th Cir. 1990)). Adderly's complaint does not meet that standard, and Adderly refused to amend his complaint to correct that deficiency even when presented with multiple opportunities to do so.

Several additional pleading deficiencies doom Adderly's claims as set out in his complaint. First, neither Adderly's initial assignment to PC status nor his later assignment to the RHU can underlie a constitutional claim based on the facts that Adderly pleaded. To the extent Adderly sought to set out an Eighth Amendment conditions-of-confinement claim, to survive a motion to dismiss, his complaint must have plausibly alleged that the alleged deprivation resulted "in the denial of the minimal

6

civilized measure of life's necessities." Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 256 (3d Cir. 2010). Such a denial involves "the deprivation of a single, identifiable human need such as food, warmth, or exercise . . . ." Wilson v. Seiter, 501 U.S. 294, 304 (1991). Here, the allegations concerning Adderly's placements do not state any facts that, if proven, would show that Adderly was denied one of life's minimal necessities. At most, the facts that Adderly did plead allow the potential inference that he suffered inconvenience or discomfort—not a constitutional deprivation.[1]

Furthermore, although Adderly found the yellow uniform associated with his PC status stigmatizing, based on his perception of other inmates' viewpoints on that status, he does not allege that any inmate harmed him or that prison officials failed to protect him from harm as a result of that alleged stigmatization. See Farmer v. Brennan, 511 U.S. 825, 847 (1994) (""[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.").

Nor has Adderly adequately alleged that he suffered the deprivation of any liberty interest pursuant to the Due Process Clause as a result of his custody status and housing

---

[1] Also, to the extent Adderly might have sought to claim that the alleged rough handling that he alluded to in his complaint was a separate Eighth Amendment violation, that effort fails. Adderly's complaint does not contain sufficient factual material to plausibly allege that the amount of force Adderly endured was imposed maliciously and in a manner that exceeded the amount of force that was appropriate under the

7

assignments. State-created liberty interests may arise only when a prison's action imposed an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995) (concluding that the inmate's thirty days in the Special Holding Unit, considered within the context of prison confinement, did not impose the type of atypical and significant deprivation of liberty in which the state could be seen to have created a liberty interest); Mitchell v. Horn, 318 F.3d 523, 532 (3d Cir. 2003). Adderly has pleaded no facts to support the contention that his assignment to PC status was anything other than a regular and typical implementation of prison regulations to protect him from potential harm. As for his later assignment to the RHU for disciplinary violations, Adderly has not pleaded facts to support the contention that the discipline he received was atypical or that it imposed any significant hardship. See, e.g., Smith v. Mensinger, 293 F.3d 641, 654 (3d Cir. 2002) (seven months of disciplinary confinement was not an atypical and significant hardship).

Adderly's contention that the defendants retaliated against him for his complaints about his PC custody status fares no better. Amid the exhaustive chronology of events that he sets out, Adderly has not pleaded facts to sufficiently allege that his objections to PC status were causally related to any of the purportedly adverse actions that he contends he endured. See Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). In essence, Adderly appears to attribute nearly every disciplinary action that affected him over the course of a

---

circumstances. See Hudson v. McMillian, 503 U.S. 1, 6 (1992).

year to his belief that the defendants sought to punish him for complaining about this PC status back in January 2012. Adderly repeatedly asserts that the discipline he received was "retaliatory," "in retaliation against" him, or "punitive" without pleading facts that could sufficiently allege a causal link.[2]

Moreover, based on the grievance materials that Adderly attached as exhibits to his complaint, the facts as alleged indicate that the same disciplinary outcomes would have occurred regardless of any potential retaliatory motive, which also defeats Adderly's retaliation claims as set out in his complaint. See id. at 334; cf. also Henderson v. Baird, 29 F.3d 464, 469 (8th Cir. 1994) (concluding that because the finding of guilt in the inmate's disciplinary hearing was based on "some evidence," that finding "essentially checkmates his retaliation claim").

With no facts to plausibly allege any individual acts of retaliation, Adderly also cannot sustain a claim that the defendants collectively conspired against him. See Gen. Refractories Co. v. Fireman's Fund Ins. Co., 337 F.3d 297, 313 (3d Cir. 2003) (holding

_____

[2] The lack of an adequately pleaded casual connection is alone sufficient to defeat Adderly's retaliation claims. Other pleading deficiencies exist as well. For example, Adderly's allegations concerning the destruction of legal materials do not state a claim because Adderly did not allege that he lost the opportunity to pursue a viable legal claim. See Peterkin v. Jeffes, 855 F.2d 1021, 1040 (3d Cir. 1988). As another example, Adderly's claims concerning the strip searches he endured fail based on the facts that he pleaded. See Florence v. Bd. of Chosen Freeholders, 566 U.S. ____, ____, 132 S. Ct. 1510, 1517 (2012). Yet another example is that the inability to access hygiene products that Adderly alleged does not rise to the level of a constitutional violation due to the limited scope of that deprivation as alleged. C.f., e.g., Penrod v. Zavaras, 94 F.3d 1399, 1406 (10th Cir. 1996). Such examples of insufficient factual allegations pervade

that a civil conspiracy claim requires a valid underlying tort claim).  In addition, Adderly alleges a conspiracy without pleading any facts that could support the idea that an agreement among the various defendants to retaliate against Adderly actually existed. We must dismiss claims, like Adderly's conspiracy claim, that are "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  See Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 557 ("[A] conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality.").

IV.

Finally, we consider Adderly's proposed supplement to his complaint—which, in anticipation of receiving an amended complaint, the District Court did not consider.  We conclude that the supplement also contains allegations that fail to state a claim upon which relief can be granted due to their vague and conclusory nature; or contains claims that, on their face, flout the governing statute of limitations without meeting the standard for relation back to Adderly's original complaint.  See Glover, 698 F.3d at 145-46.

\* \* \*

Perhaps Adderly could have corrected the foregoing pleading deficiencies in an amended complaint, but after the District Court provided him the opportunity to amend his complaint, he declined to do so.  Because Adderly's complaint as initially drafted

---

Adderly's complaint, notwithstanding its length and laborious recitation of events.

pleaded no viable claim, this appeal presents us with no substantial question. We will therefore affirm the District Court's judgment.