**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-1085
_____

JOHN SLOAN,
                    Appellant

v.

PENNSYLVANIA DEPARTMENT OF CORRECTIONS; MERCER SCI;
SUPERINTENDENT THOMPSON; CAPT. SULLENBERGER; MR. BOGGS, Maint.
Mgr; MR. BROMLEY, Facility Safety Manager; MR. DELLORSO, Maintenance #24;
MS. BOAL, Medical Dept. Supervisor; MR. WOODS, OSCS; MS. ENGSTROM, Inmate
Capt. Spc.; CORRECT CARE SOLUTIONS, (CCS); MR. RICHARD ELLERS, V.P.;
DR. SCOTT MORGAN; MS. KAREN FEATHER, C.C.S. Site Administrator
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 2:16-cv-01182)
District Judge:  Honorable Nora B. Fischer
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
February 7, 2020

Before: KRAUSE, MATEY and COWEN, <u>Circuit</u> <u>Judges</u>

(Opinion filed: February 10, 2020)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

PER CURIAM

John Sloan, a Pennsylvania prisoner who is proceeding pro se, appeals from an order of the United States District Court for the Western District of Pennsylvania granting the defendants' motions for summary judgment. We will affirm.

I.

Sloan sustained a fractured toe while on a work assignment as part of SCI-Mercer's maintenance crew. He later filed a civil rights complaint under 42 U.S.C. § 1983, which he later amended, alleging, inter alia, that he was not adequately treated for the toe injury, that the working conditions in the prison were dangerous, and that he was fired from his position in the prison's maintenance department in retaliation for initiating a civil suit in state court. He named as defendants the Pennsylvania Department of Corrections, SCI-Mercer, and several SCI-Mercer employees ("DOC defendants"). He also named Correct Care Solutions, a healthcare company that provides medical services to inmates, and three of its employees, Richard Ellers, Karen Feathers, and Dr. Morgan ("medical defendants").

The medical defendants and the DOC defendants filed separate motions for summary judgment.[1] The medical defendants asserted that they provided Sloan with

---

[1] Earlier, the District Court granted in part those defendants' motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). Sloan has not challenged that determination in his brief. See United States v. Pelullo, 399 F.3d 197, 222 (3d Cir. 2005) (stating that "[i]t is well settled that an appellant's failure to identify or argue an issue in his opening brief constitutes waiver of that issue on appeal."). In any event, we conclude that, for the reasons provided in the Magistrate Judge's Report and Recommendation, the District Court properly granted in part the motions to dismiss. (ECF No. 54.)

appropriate treatment; the DOC defendants argued that Sloan failed to exhaust his administrative remedies and that his claims lacked merit. A Magistrate Judge recommended granting both motions for summary judgment. The Magistrate Judge concluded that the summary judgment record failed to support Sloan's claims against the medical defendants, and recommended that the District Court decline to exercise jurisdiction over any state law claims. In a separate Report and Recommendation, the Magistrate Judge stated that Sloan had failed to exhaust administrative remedies as to his claims against the DOC defendants. The District Court agreed with the Magistrate Judge's conclusions and granted both motions for summary judgment. Sloan timely appealed.

## II.

We have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over the District Court's order granting summary judgment. See DeHart v. Horn, 390 F.3d 262, 267 (3d Cir. 2004). Summary judgment is proper where, viewing the evidence in the light most favorable to the nonmoving party and drawing all inferences in favor of that party, there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Kaucher v. County of Bucks, 455 F.3d 418, 422-23 (3d Cir. 2006). We may affirm on any basis supported by the record. See Fairview Twp. v. EPA, 773 F.2d 517, 525 n.15 (3d Cir. 1985).

III.

To succeed on an Eighth Amendment claim for the denial or delay of medical care, Sloan is required to demonstrate that the medical defendants were deliberately indifferent to his serious medical needs. See Estelle v. Gamble, 429 U.S. 97, 103-05 (1976). "To act with deliberate indifference to serious medical needs is to recklessly disregard a substantial risk of serious harm." Giles v. Kearney, 571 F.3d 318, 330 (3d Cir. 2009). Deliberate indifference can be shown by a prison official's "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Estelle, 429 U.S. at 104-05. Allegations of medical malpractice are not sufficient to establish a constitutional violation. White v. Napoleon, 897 F.2d 103, 108-09 (3d Cir. 1990). Furthermore, "mere disagreement as to the proper medical treatment" does not support a claim of an Eighth Amendment violation. Monmouth Cty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987).

It is clear from the record that Sloan received timely and adequate medical care for his injured toe. That injury occurred on August 8, 2014, when Sloan dropped a manhole cover on his left big toe while on a work assignment as part of SCI-Mercer's maintenance crew. Initially, Sloan was treated at the prison infirmary, where he was diagnosed with a "contusion laceration, left great toe." The same day, Sloan was transported to the hospital for X-rays, which revealed a fracture. Upon return to SCI-Mercer that evening, Sloan was placed under observation in the infirmary. Medical staff provided Sloan with medication when he complained of pain and changed the bloody bandages. The next day, Sloan was examined by Dr. Morgan, who noted that Sloan had been issued crutches, that

he should use a wheelchair "for distances," and that he should not engage in work or sports. On August 14, 2014, Sloan was examined by an orthopedic surgeon, who recommended that Sloan be given a "post-op shoe." At a follow-up appointment one month later, the surgeon noted that Sloan "can weight bare as tolerated and transition to normal shoe wear." Over the next several months, Sloan had additional X-rays taken and was reevaluated by a physician's assistant. On November 4, 2014, Dr. Morgan ordered orthopedic shoes for Sloan, but discontinued that order the next month because Sloan did not meet the criteria for issuance of such shoes. Instead, Dr. Morgan ordered gel insoles for Sloan and advised Sloan that he should use a stiff-soled shoe. Dr. Morgan also ordered that Sloan could return to work. Sloan requested orthopedic shoes for "comfort," but his requests were denied. Sloan continued to use the gel insoles through 2016.

The undisputed record demonstrates that the medical defendants, pursuant to their professional judgment, adequately treated Sloan's injured toe. Sloan did not present any evidence from which a reasonable juror could conclude that the medical defendants intentionally refused to provide needed treatment, delayed necessary treatment for a non-medical reason, prevented Sloan from receiving required treatment, or persisted in a particular course of treatment "in the face of resultant pain and risk of permanent injury." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999) (quoting White v. Napoleon, 897 F.2d 103, 109-11 (3d Cir. 1990)). In his complaint, Sloan emphasized that he should have been provided with orthopedic shoes instead of gel insoles. But that assertion is simply a disagreement with a course of treatment, which is insufficient to establish deliberate indifference. See Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004). Notably,

5

the orthopedic surgeon had concluded that Sloan could "transition to normal shoe wear" and Dr. Morgan advised Sloan to use a stiff-soled shoe. Under these circumstances, the District Court properly granted the medical defendants' motion for summary judgment. See Norfleet v. Webster, 439 F.3d 392, 393, 396-97 (7th Cir. 2006) (holding that doctor's refusal to prescribe soft-soled shoes, which was "undisputably based on medical records, some of which support the challenged determination, cannot support an inference of deliberate indifference").

## IV.

The District Court also properly granted summary judgment with respect to the unsafe working conditions and retaliation claims brought against the DOC defendants.[2] Sloan alleged that the DOC defendants failed to protect him from unsafe working conditions on the prison maintenance crew. To establish an Eighth Amendment violation with respect to conditions of confinement, a prisoner must show that he has been deprived of "the minimal civilized measure of life's necessities," such as food, clothing, shelter, sanitation, medical care, or personal safety. Farmer v. Brennan, 511 U.S. 825,

---

[2] The District Court granted the DOC defendants' motion for summary judgment on the basis that Sloan failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act (PLRA). 42 U.S.C. § 1997e(a); Jones v. Unknown D.O.C. Bus Driver & Transp. Crew, 944 F.3d 478, 480 (3d Cir. 2019) ("If a prisoner wants to file a § 1983 suit, he must exhaust the prison's internal administrative remedies first."). But because it appears that Sloan may have substantially complied with the exhaustion requirements, see Small v. Camden County, 728 F.3d 265, 272 (3d Cir. 2013), or have been thwarted from doing so, see Rinaldi v. United States, 904 F.3d 257, 266-67 (3d Cir. 2018), we will address the substance of Sloan's claims. See Glover v. FDIC, 698 F.3d 139, 143 n.4 (3d Cir. 2012) (holding that a district court can be affirmed on any basis supported by the record); Nyhuis v. Reno, 204 F.3d 65, 69 n.4 (3d Cir. 2000) (stating that exhaustion under the PLRA is not a jurisdictional requirement).

832, 834 (1994) (citations omitted).  In addition, the prisoner must demonstrate that the deprivation was sufficiently serious and that the defendants acted with deliberate indifference, i.e., that prison officials knew of and disregarded a substantial risk of serious harm.  See id. at 837.  "[C]laims of negligence, . . . without some more culpable state of mind, do not constitute 'deliberate indifference.'"  See Singletary v. Pa. Dep't of Corr., 266 F.3d 186, 192 n.2 (3d Cir. 2001).

On the day that he was injured, Sloan and two other inmates were directed to remove a manhole cover with a two-foot prybar.  According to Sloan's amended complaint, "[a]s the manhole cover was being removed using the prybar, the prybar slipped and the cover fell and contacted Sloan's left foot."  Sloan alleged that his supervisor "did not secure the proper manhole removal tool" and that he and the inmates who assisted him were not "given any personal protective gear or equipment nor were they properly instructed in the safe removal of manhole covers."  Sloan proffered no evidence, however, from which a reasonable jury could infer that the DOC defendants knew of and disregarded the risk that caused the accident.  Notably, before starting his job on the maintenance crew, Sloan participated in an "Inmate Worksite Orientation," which included education on "safety guards and practices."  (ECF Nos. 95-3; 95-4.) Sloan did not voice any concerns about a lack of training or the absence of proper equipment.  (ECF No. 95-6, ¶ 11-12.)  And Sloan's supervisor stated that he would not ask an inmate to perform a task that he did not feel safe doing himself.  (Id. at ¶ 9.)  At most, the DOC defendants were negligent for allowing Sloan to work in conditions in which his accident was possible, but negligence will not support a claim of deliberate

7

indifference. See Durmer v. O'Carroll, 991 F.2d 64, 67 (3d Cir. 1993) (explaining that deliberate indifference requires something "more than negligence").

Sloan also alleged that the DOC defendants transferred him from his maintenance job in retaliation for initiating a civil suit in state court. "A prisoner alleging retaliation must show (1) constitutionally protected conduct, (2) an adverse action by prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him." Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003) (internal quotation marks omitted) (quoting Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001)). Filing a state court lawsuit is constitutionally protected conduct. See Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981). And loss of a prison work assignment can support a retaliation claim. See Wisniewski v. Fisher, 857 F.3d 152, 157 (3d Cir. 2017). Here, however, the transfer was not an adverse action. Sloan was removed from his maintenance job on July 3, 2015. (ECF No. 95-5, ¶ 3.) He resumed work as a library aide on August 16, 2015. (Id. at ¶ 8.) During the approximately six-week period between assignments, Sloan was compensated as if he were still working. (Id. at ¶ 9.) In addition, his work as a library aide was compensated at the same hourly rate that he was paid in his maintenance job. (Id. at ¶ 10.) Sloan did not allege that his duties as a library aide job were somehow more unpleasant than those as a maintenance worker, nor did he otherwise meaningfully claim that there were negative consequences to the job transfer. Under these circumstances, we conclude that no reasonable trier of fact could conclude that Sloan's reassignment, which had de minimis consequences, would deter a prisoner of

8

ordinary firmness from exercising his rights.  Cf. Watson v. Rozum, 834 F.3d 417, 423

(3d Cir. 2016) ("An adverse consequence 'need not be great in order to be actionable[;]'

rather, it need only be 'more than de minimis.'" (citation omitted)).

## V.

For the foregoing reasons, we will affirm the District Court's judgment granting

the defendants' motions for summary judgment.[3]

---

[3] In granting the motions for summary judgment, the District Court dismissed Sloan's state law claims.  A District Court has discretion to decline to exercise supplemental jurisdiction over state law claims if the court "has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  Because the District Court properly dismissed Sloan's claims under federal law, it plainly acted within its discretion in declining to hear his claims under state law.  See Maio v. Aetna, Inc., 221 F.3d 472, 480 n.6 (3d Cir. 2000).