KRAUSE, Circuit Judge.
 

 Appellant Michael Rinaldi, who at all relevant times was an inmate in custody at United States Penitentiary, Lewisburg ("Lewisburg" or the "Institution"), appeals the District Court's dismissal of his complaint
 
 [1]
 
 alleging that the conduct of various
 personnel violated his constitutional and statutory rights. His appeal requires us to resolve three matters of first impression for our Court: (1) what showing an inmate must make to establish that administrative remedies were not "available" within the meaning of the Prison Litigation Reform Act ("PLRA"); (2) whether the PLRA's exhaustion requirement is satisfied where a prison administrator elects to resolve a procedurally improper administrative request on the merits; and (3) whether a prison's housing and cellmate assignments meet the discretionary function exception to the Federal Tort Claims Act's limited waiver of sovereign immunity. For the reasons that follow, we will affirm the District Court's dismissal of Rinaldi's complaint in part and will vacate and remand in part.
 

 I. Factual Background
 

 Between November 2011 and 2012, while housed at Lewisburg, Rinaldi filed a number of administrative requests, including one related to an alleged assault and one related to alleged retaliation. He initiated his assault claim with an "informal resolution,"
 
 [2]
 
 dated January 29, 2012, alleging that he had been assaulted by a previous cellmate (Cellmate #1), and "requesting the institution discontinue its practice of forcing inmates to cell together [ ] regardless of their compatibility." JA 160. On February 1, after that informal request was denied, Rinaldi filed a formal request (the "Assault Request"), which the Institution eventually denied on the ground that there was "no basis for [Rinaldi's] accusations." JA 165.
 

 The following day, February 2, Rinaldi was transferred to another unit. According to Rinaldi's complaint, Appellee Counselor Baysore had previously warned Rinaldi that unless he stopped filing requests, "she would have him moved to a different unit and placed in a cell with an inmate who was known for assaulting his cellmates," and Appellee Officer Gee, who conducted the transfer, told Rinaldi that the reason he was being moved was because he "didn't listen" to those warnings. JA 61. Despite his protests, Rinaldi was transferred and placed in a cell with a new cellmate (Cellmate #2), who, Rinaldi alleges, threatened him by informing Lewisburg personnel, including Officer Gee and Counselor Baysore, "that if Rinaldi were placed in the cell he would kill [him]." JA 61. Over the course of the next three weeks, Rinaldi asserts he "suffered cuts and bruises and emotional distress" from several physical altercations with Cellmate #2. JA 61
 
 .
 

 Rinaldi sought administrative relief for the alleged retaliatory transfer on February 2, but because he allegedly was concerned
 about the risk of further retaliation, he opted not to file an informal resolution or initial retaliatory transfer request directly with the Institution. Instead, he followed the procedure for "Sensitive" requests, filing this claim (the "Retaliation Request") directly with the Regional Director. According to BOP records, the Retaliation Request was rejected as procedurally improper with directions to first file it at the Institution, which Rinaldi declined to do.
 
 [3]
 

 Separately, Rinaldi also sought to obtain administrative relief for the assault by Cellmate #2. Although Rinaldi was required to file an informal resolution and formal request with the Institution,
 
 [4]
 
 he did not do so. Rather, as he was then poised to appeal the denial of his original Assault Request (concerning Cellmate #1) to the Regional Director, he simply incorporated allegations as to both Cellmate #1 and Cellmate #2 into his appeal. As a result, the Regional Director could have rejected that appeal, at least as to Cellmate #2, on procedural grounds for failure to exhaust because his claim as to Cellmate #2 was never presented to the Institution in the first instance. Instead, however, he issued a decision that acknowledged that the appeal raised claims concerning the assaults by Cellmates #1 and #2 and rejected
 
 both
 
 claims on the merits. As the Regional Director put it:
 

 You appeal the response from the Warden at USP Lewisburg and claim you were forced into a cell with another inmate who you allege threatened to kill you prior to being placed in the same cell. You also state you were once assaulted by a previous cellmate and received injuries ... [T]here is no record of you being assaulted by your previous or current cellmate ... Accordingly, your appeal is denied.
 

 JA 168.
 
 [5]
 

 II. Procedural History
 

 Unable to obtain redress through the BOP grievance process, Rinaldi, initially proceeding
 
 pro se
 
 , filed a complaint in the Middle District of Pennsylvania raising three claims relevant to this appeal: (1) a First Amendment claim based on the retaliatory conduct alleged in the Retaliation Request; (2) an Eighth Amendment claim based on the cell placement and resulting attack by Cellmate #2 alleged in his appeal of the Assault Request; and (3) a claim pursuant to the Federal Tort Claims Act ("FTCA"),
 
 28 U.S.C. § 1346
 
 , against the United States for negligently placing Rinaldi with a cellmate that prison personnel knew or should have known would assault him.
 
 [6]
 

 The District Court granted the Government's "Motion to Dismiss or, in the alternative, Motion for Summary Judgment," concluding (1) the First Amendment claim was barred by the PLRA, 42 U.S.C. § 1997e(a), because Rinaldi had declined to file his Retaliation Request with the Institution and thus had not exhausted the Retaliation Request; (2) the Eighth Amendment claim covering the assault by Cellmate #2 was likewise unexhausted because Rinaldi failed to file an initial request and raised it only in the appeal of his Assault Request; and (3) the Court did not have jurisdiction over the FTCA claim because cellmate assignments fall within the discretionary function exception to the FTCA's waiver of sovereign immunity.
 
 [7]
 

 Rinaldi v. United States
 
 , No. 13-cv-450,
 
 2015 WL 2131208
 
 , at *5-8 (M.D. Pa. May 7, 2015) ;
 
 28 U.S.C. § 2680
 
 (a).
 

 After appointing
 
 pro bono
 
 counsel on appeal, we directed the parties to address, among other things, whether Rinaldi failed to exhaust his administrative remedies regarding his First and Eighth Amendment claims and the applicability of the discretionary function exception to Rinaldi's FTCA claim.
 

 III. Jurisdiction and Standard of Review
 

 The District Court had jurisdiction under
 
 28 U.S.C. § 1331
 
 , and we have jurisdiction under
 
 28 U.S.C. § 1291
 
 . We exercise plenary review over both the exhaustion determination,
 
 Spruill v. Gillis
 
 ,
 
 372 F.3d 218
 
 , 226 (3d Cir. 2004), and the applicability of the discretionary function exception to the waiver of sovereign immunity,
 
 Mitchell v. United States
 
 ,
 
 225 F.3d 361
 
 , 362 (3d Cir. 2000).
 

 IV. Discussion
 

 Below we consider whether Rinaldi exhausted his First Amendment and Eighth Amendment claims before turning to Rinaldi's FTCA claim.
 

 A. Exhaustion under the PLRA
 

 Congress enacted the PLRA to reduce the "disruptive tide of frivolous prisoner litigation."
 
 Woodford v. Ngo
 
 ,
 
 548 U.S. 81
 
 , 97,
 
 126 S.Ct. 2378
 
 ,
 
 165 L.Ed.2d 368
 
 (2006). In contrast to its precursor, the Civil Rights of Institutionalized Persons
 Act, § 7,
 
 94 Stat. 352
 
 (1980), which had a "weak exhaustion provision," the PLRA "invigorated" the administrative remedy of exhaustion,
 
 Woodford
 
 ,
 
 548 U.S. at 84
 
 ,
 
 126 S.Ct. 2378
 
 , by providing:
 

 [n]o action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail ...
 
 until such administrative remedies as are available
 
 are exhausted.
 

 42 U.S.C. § 1997e(a) (emphasis added). Exhaustion is thus a non-jurisdictional prerequisite to an inmate bringing suit and, for that reason, as we held in
 
 Small v. Camden County
 
 , it constitutes a " 'threshold issue that
 
 courts
 
 must address to determine whether litigation is being conducted in the right forum at the right time.' "
 
 728 F.3d 265
 
 , 270 (3d Cir. 2013) (quoting
 
 Dillon v. Rogers
 
 ,
 
 596 F.3d 260
 
 , 272 (5th Cir. 2010) ). We make that determination by "evaluating compliance with the prison's specific grievance procedures,"
 
 Drippe v. Tobelinski
 
 ,
 
 604 F.3d 778
 
 , 781 (3d Cir. 2010), and analyzing whether the procedures were "available" to the inmate.
 
 Small
 
 ,
 
 728 F.3d at 269
 
 , 271 ; 42 U.S.C. § 1997e(a).
 

 While
 
 Small
 
 made clear that factual disputes relevant to exhaustion may be resolved by a district judge without the participation of a jury,
 

 id.
 

 at 271
 
 , we recently clarified that, before engaging in such fact-finding, the judge must provide the parties with "some form of notice ... and an opportunity to respond," although we left the exact form of this notice to "the discretion of the district court [ ] on a case-by-case basis."
 
 Paladino v. Newsome
 
 ,
 
 885 F.3d 203
 
 , 211 (3d Cir. 2018). At a minimum, however, the court must "notify the parties that it will consider exhaustion in its role as a fact finder under
 
 Small
 
 ," and, although live testimony is not necessarily required, it also "must at least provide the parties with an opportunity to submit materials relevant to exhaustion that are not already before it."
 

 Id.
 

 ; see
 

 Small
 
 ,
 
 728 F.3d at 269
 
 .
 

 1.
 
 Rinaldi's First Amendment Retaliation Claim
 

 Rinaldi argues that his First Amendment claim should not have been dismissed on exhaustion grounds because the safety risks of filing directly with the Institution rendered that administrative remedy unavailable. Because we must measure whether Rinaldi exhausted his administrative remedies against the yardstick of the grievance procedures set forth in the relevant BOP regulations,
 
 see
 

 28 C.F.R. §§ 542.13
 
 - .18 ;
 
 Drippe
 
 ,
 
 604 F.3d at 781
 
 , we will first summarize (a) the relevant administrative remedies under BOP regulations and (b) the case law relevant to the availability of those remedies under the PLRA before addressing (c) the showing an inmate must make to prove unavailability, and (d) whether remand is necessary to determine if Rinaldi can make that showing here.
 

 (a)
 
 Exhaustion of BOP Administrative Remedies
 

 As a general matter, inmates must (1) attempt an informal resolution with staff at the institution,
 
 id
 
 . § 542.13(a) ; (2) file a formal complaint with the institution,
 

 id.
 

 § 542.14(c) ; (3) file an appeal to the appropriate Regional Director if the inmate is not satisfied with the institution's response to the formal complaint,
 

 id.
 

 § 542.15(a); and (4) file another appeal to the General Counsel if the inmate is not satisfied with the Regional Director's response to the appeal,
 

 id.
 

 However, where an inmate "reasonably believes the issue [that is the subject of his grievance] is sensitive and the inmate's safety or well-being would be placed in danger if the
 Request became known at the institution," the inmate may proceed directly to Step (3) by "submit[ing] the Request directly to the appropriate Regional Director."
 

 Id.
 

 § 542.14(d). The inmate must "clearly mark 'Sensitive' upon the Request and explain, in writing, the reason for not submitting the Request at the institution."
 

 Id.
 

 If the appropriate reviewer does not agree that the request is "Sensitive," the regulations provide that "the inmate shall be advised in writing" that the "Request will not be accepted," and the inmate then "may pursue the matter by submitting a [ ] ... Request locally" with the institution.
 

 Id.
 

 Here, Rinaldi considered his Retaliation Request a "Sensitive" request and therefore filed it with the Regional Director in the first instance. As discussed above, however, the Regional Director rejected it on the procedural ground that Rinaldi should have filed first with Lewisburg.
 
 [8]
 
 That tees up the first exhaustion issue we confront today: whether Rinaldi was required to submit his Retaliation Request to the Institution to satisfy the PLRA's exhaustion requirement before filing his First Amendment claim in federal court or whether he was relieved of that requirement because the opportunity to file with the Institution was not "available." 42 U.S.C. § 1997e(a).
 

 (b)
 
 Unavailability of Administrative Remedies
 

 The PLRA requires only "proper exhaustion," meaning exhaustion of those administrative remedies that are "available."
 
 Woodford
 
 ,
 
 548 U.S. at 93
 
 ,
 
 126 S.Ct. 2378
 
 . In its recent decision in
 
 Ross v. Blake
 
 , the Supreme Court identified "three kinds of circumstances in which an administrative remedy, although officially on the books," is not "available" because it is "not capable of use to obtain relief": (1) when "it operates as a simple dead end-with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when it is "so opaque that it becomes, practically speaking, incapable of use," such as when no ordinary prisoner can discern or navigate it; or (3) when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation,
 or intimidation." --- U.S. ----,
 
 136 S.Ct. 1850
 
 , 1859-60,
 
 195 L.Ed.2d 117
 
 (2016).
 

 We too have encountered circumstances in which a grievance process, though "officially on the books,"
 
 Ross
 
 ,
 
 136 S.Ct. at 1859
 
 , is in reality incapable of use such that the PLRA's exhaustion requirement must be deemed satisfied. In
 
 Brown v. Croak
 
 ,
 
 312 F.3d 109
 
 (3d Cir. 2002), for example, we rejected the prison's affirmative defense of failure to exhaust where the plaintiff alleged he was given misleading filing instructions, resulting in a procedural default, and argued "essentially that officials in the security department of the prison thwarted his efforts to exhaust his administrative remedies."
 
 Id
 
 . at 113. And more recently, in
 
 Robinson v. Superintendent Rockview SCI
 
 , we held that the prison "rendered its administrative remedies unavailable to [the plaintiff] when it failed to timely (by its own procedural rules) respond to his grievance and then repeatedly ignored his follow-up requests for a decision on his claim."
 
 831 F.3d 148
 
 , 154 (3d Cir. 2016). In such circumstances, "filing suit [was the plaintiff's] only method to advance his claim."
 

 Id.
 

 Rinaldi now asks us to recognize another circumstance in which the grievance process is unavailable,
 
 i.e.
 
 , where an inmate is deterred from pursuing an administrative grievance by a prison official's serious threats of substantial retaliation-a circumstance that Rinaldi contends falls squarely within
 
 Ross
 
 's third category because a prisoner's ability to take advantage of the grievance process has then been "thwarted" by prison administrators "through ... intimidation."
 
 Ross
 
 ,
 
 136 S.Ct. at 1860
 
 .
 

 We agree that serious threats of substantial retaliation can trigger this third category of unavailability, and thus join our Sister Circuits who have held, even before
 
 Ross
 
 , that administrative remedies are not "available" under the PLRA where a prison official inhibits an inmate from resorting to them through serious threats of retaliation and bodily harm.
 
 [9]
 

 See
 

 McBride v. Lopez
 
 ,
 
 807 F.3d 982
 
 , 986-87 (9th Cir. 2015) ;
 
 Tuckel v. Grover
 
 ,
 
 660 F.3d 1249
 
 , 1252-53 (10th Cir. 2011) ;
 
 Turner v. Burnside
 
 ,
 
 541 F.3d 1077
 
 , 1084-86 (11th Cir. 2008) ;
 
 Kaba v. Stepp
 
 ,
 
 458 F.3d 678
 
 , 684 (7th Cir. 2006) ;
 
 Hemphill v. New York
 
 ,
 
 380 F.3d 680
 
 , 686-87 (2d Cir. 2004),
 
 abrogated on
 

 other grounds
 

 as recognized in
 

 Williams v. Correction Officer Priatno
 
 ,
 
 829 F.3d 118
 
 , 123 (2d Cir. 2016).
 

 As the Tenth Circuit eloquently explained in
 
 Tuckel v. Grover
 
 , it is "difficult to accept the proposition that an administrative remedy is available in any meaningful sense if its use will result in serious retaliation and bodily harm."
 
 660 F.3d at 1252
 
 . To the contrary, threats made by prison officials that inhibit an inmate from utilizing an administrative process "disrupt the operation and frustrate the purposes of the administrative remedies process enough that the PLRA's exhaustion requirement does not allow them" and thus lift the exhaustion requirement as to that part of the process.
 

 Id.
 

 at 1253
 
 (quoting
 
 Turner v. Burnside
 
 ,
 
 541 F.3d at
 
 1085 ). This approach not only is consistent with the plain language of the PLRA, which requires only exhaustion of administrative remedies "as are available,"
 

 42 U.S.C. § 1997e(a), but also is "faithful to the underlying purposes of the PLRA,"
 
 id.
 
 at 1253, as it "reduces any incentive that prison officials otherwise might have to use threats to prevent inmates from exhausting their administrative remedies" and "thereby safeguards the benefits of the administrative review process for everyone,"
 
 Turner
 
 ,
 
 541 F.3d at 1085
 
 .
 

 With
 
 Ross
 
 , the Supreme Court too has recognized that "intimidation" by prison officials can "thwart inmates from taking advantage of a grievance process" and thus render that process "unavailable."
 
 136 S.Ct. at 1860
 
 . But the question remains what showing an inmate must make to establish such "intimidation" and defeat a failure-to-exhaust defense: Must he show (1) that, objectively, an inmate of reasonable fortitude would be deterred from filing a grievance; (2) that, subjectively, he himself was deterred from filing a grievance; or (3) that both an objective and subjective test have been satisfied? To that question we now turn.
 

 (c)
 
 The Showing Required to Prove Unavailability
 

 The burden to plead and prove failure to exhaust as an affirmative defense rests on the defendant.
 
 Ray v. Kertes
 
 ,
 
 285 F.3d 287
 
 , 295 (3d Cir. 2002). But once the defendant has established that the inmate failed to resort to administrative remedies, the onus falls on the inmate to show that such remedies were unavailable to him.
 
 Tuckel
 
 ,
 
 660 F.3d at 1253-54
 
 .
 

 To determine what showing is required to establish unavailability based on "intimidation," we find helpful guidance in the reasoning of other Courts of Appeals. In
 
 Turner v. Burnside
 
 , the Eleventh Circuit held that an inmate must show both that "the threat actually did deter the plaintiff inmate from lodging a grievance or pursuing a particular part of the process"; and that "the threat is one that would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursuing the part of the grievance process that the inmate failed to exhaust."
 
 541 F.3d at 1085
 
 . The Tenth Circuit has also embraced the "two-prong analysis in
 
 Turner
 
 ... as the best model" for the "showing necessary to defeat a failure-to-exhaust defense,"
 
 Tuckel
 
 ,
 
 660 F.3d at 1253-54
 
 , explaining that the subjective element ensures that the grievance process was perceived as unavailable by this plaintiff,
 
 i.e.
 
 , "that he was actually deterred," while the objective element "ensures that inmates cannot easily circumvent the exhaustion requirement" and thus "only threats that are sufficiently serious and retaliatory acts that are severe enough to deter a reasonable inmate will result in an administrative remedy becoming unavailable for PLRA purposes,"
 

 id.
 

 at 1254
 
 . The Ninth Circuit, too, has embraced
 
 Turner
 
 as "straightforward and conceptually simple to apply."
 
 See
 

 McBride
 
 ,
 
 807 F.3d at 987-88
 
 .
 

 We also find the
 
 Turner
 
 test a sensible one.
 
 [10]
 
 The objective component is of chief importance because it maintains the exhaustion requirement for the vast majority of claims and allows otherwise unexhausted claims to proceed only in the exceptional circumstance where the facts alleged would reasonably give rise to a substantial fear of serious harm. As the
 
 Tuckel
 
 Court explained, the objective requirement allows courts to easily weed out suits that attempt to circumvent the PLRA, such as where "a threat ... was allegedly made
 years prior to the inmate's suit" or "an inmate is no longer held in the prison in which he experienced retaliatory violence."
 
 660 F.3d at 1254
 
 . Because "demonstrating that an official objectively chilled an inmate from relying on administrative remedies presents a significant challenge in any context," the objective prong leaves "little incentive for an inmate to assert baseless retaliation claims rather than simply utilizing a grievance procedure,"
 
 id
 
 ., and it instead filters for those threats so serious as to lead a rational inmate to forego the benefits of administrative review,
 
 see, e.g.
 
 ,
 
 McBride
 
 ,
 
 807 F.3d at 988
 
 (concluding that the inmate failed to satisfy
 
 Turner
 
 's objective prong where there was no "basis in the record from which the district court could determine that a reasonable prisoner of ordinary firmness would have understood the prison official's actions to threaten retaliation if the prisoner chose to utilize the prison's grievance system").
 

 But the subjective component also has a role to play. For even though a showing that an inmate of reasonable fortitude would be deterred offers relevant circumstantial evidence of subjective deterrence,
 
 see
 

 Hope v. Pelzer
 
 ,
 
 536 U.S. 730
 
 , 738,
 
 122 S.Ct. 2508
 
 ,
 
 153 L.Ed.2d 666
 
 (2002) ;
 
 Kedra v. Schroeter
 
 ,
 
 876 F.3d 424
 
 , 441 (3d Cir. 2017), a district court may conclude-based on documents, affidavits, or live testimony if deemed warranted,
 
 see
 

 Paladino
 
 ,
 
 885 F.3d at
 
 211 -that the subjective showing has not been satisfied. Evidence that an inmate continued to file substantially similar claims through the same grievance process, for example, may be sufficiently compelling to defeat an inmate's assertion of subjective deterrence.
 

 In sum, we perceive a valuable role for both the objective and subjective components of the
 
 Turner
 
 test and today adopt it as our own. To defeat a failure-to-exhaust defense, an inmate must show (1) that the threat was sufficiently serious that it would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance and (2) that the threat actually did deter this particular inmate.
 

 (d)
 
 Application to Rinaldi
 

 As applied here, Rinaldi's Retaliation Request unquestionably satisfies the objective test for unavailability. Accepting the allegation that Rinaldi's continued resistance to the grievance process is what led prison authorities to house him with a cellmate they knew threatened to kill him, we have little trouble concluding that "a reasonable inmate of ordinary firmness and fortitude" would be "deter[red] ... from lodging a grievance or pursuing the part of the grievance process that the inmate failed to exhaust."
 
 Turner
 
 ,
 
 541 F.3d at 1084-85
 
 . And the Government conceded as much at oral argument. The Government disputes, however, whether Rinaldi was subjectively deterred.
 

 Because the District Court did not have the benefit of the test we announce today and because we had not yet clarified in
 
 Paladino
 
 what procedures are required when a district court must resolve factual disputes relevant to exhaustion, the District Court did not have occasion to determine whether Rinaldi made the requisite showing of subjective deterrence. Nonetheless, the Government urges that we should affirm, rather than remand, because the record reflects that Rinaldi filed a number of grievances after the allegedly retaliatory transfer-a circumstance that the Government contends, in effect, negates subjective deterrence as a matter of law. We are not persuaded.
 

 As the Seventh Circuit has observed, the "ability to take advantage of administrative grievances is not an 'either-or' proposition. Sometimes grievances are clearly available; sometimes they are not; and
 sometimes there is a middle ground where, for example, a prisoner may only be able to file grievances on certain topics."
 
 Kaba
 
 ,
 
 458 F.3d at 685
 
 . Thus, the court concluded, it "was unrealistic to expect [the inmate] to file a grievance against the very people who were threatening retaliation and preventing him from obtaining the proper forms," and the fact that an inmate files unrelated claims "does not prove that remedies were available within the system" for purposes of exhaustion.
 

 Id.
 

 at 685-86
 
 . That observation holds true in this case, where Rinaldi's willingness to file grievances concerning unrelated and far less inflammatory subjects like cleaning supplies is hardly dispositive of whether he was subjectively deterred from pursuing his Retaliation Request at the Institution. Indeed, the Government has not identified any subsequent grievance that can be characterized as substantially similar to his Retaliation Request.
 

 Accordingly, we will vacate the District Court's dismissal of Rinaldi's First Amendment claim, and will remand for the District Court to consider subjective deterrence in the first instance.
 

 2.
 
 Rinaldi's Eighth Amendment Assault Claim
 

 Rinaldi also challenges the District Court's dismissal of his Eighth Amendment claim for failure to exhaust. As explained below, even though he did not initiate a new grievance for the assault by Cellmate #2 and raised that claim for the first time in the appeal of his original Assault Request, exhaustion was satisfied under our case law because the Regional Director denied it on the merits.
 
 [11]
 

 In
 
 Camp v. Brennan
 
 ,
 
 219 F.3d 279
 
 (3d Cir. 2000), despite the fact that the inmate had not completed a necessary step in the Department of Corrections' grievance process, we concluded that the prison had waived any exhaustion defense and "judicial consideration [wa]s open to [the inmate]" because the inmate's "allegations [had] been fully examined
 
 on the merits
 
 by the ultimate administrative authority," and therefore a "substantive determination [had been] made at the highest level."
 

 Id.
 

 at 281
 
 . Likewise, in
 
 Spruill
 
 , drawing on principles from habeas and administrative law, we reasoned that whether a prisoner had "properly exhausted" a claim must be determined by evaluating not only "the prisoner's compliance with the prison's administrative regulations governing inmate grievances," but also "the waiver, if any, of such regulations by prison officials."
 
 372 F.3d at 222
 
 . Thus, even though Spruill had failed to include the name of the relevant prison official, we held that the grievance office's acknowledgment of which prison official was involved had "excused any procedural defects in Spruill's initial grievances."
 

 Id.
 

 at 234
 
 .
 

 The Government contends in its briefing that our precedent was abrogated by the Supreme Court's decision in
 
 Woodford v. Ngo
 
 ,
 
 548 U.S. 81
 
 ,
 
 126 S.Ct. 2378
 
 ,
 
 165 L.Ed.2d 368
 
 (2006).
 
 [12]
 
 Quite the opposite. In
 
 Woodford
 
 , the Supreme Court resolved a split between those Circuits that had adopted a broader interpretation of the PLRA's exhaustion requirement and those, like ours, that had adopted a test of "proper exhaustion," meaning "using all steps that the agency holds out, and doing so
 
 properly
 
 (so that the agency addresses the issues on the merits)."
 
 548 U.S. at 90
 
 ,
 
 126 S.Ct. 2378
 
 (citation omitted). The Court endorsed the latter approach-citing specifically to
 
 Spruill
 
 and even echoing our observation in
 
 Spruill
 
 that PLRA exhaustion should mirror the "proper exhaustion" requirements from both the habeas and administrative law contexts.
 

 Id.
 

 at 88-89
 
 ,
 
 126 S.Ct. 2378
 
 .
 

 Although
 
 Woodford
 
 did not specifically address whether review on the merits of an otherwise procedurally defaulted claim constitutes "proper exhaustion," the Court's reference to
 
 Spruill
 
 and its reliance on principles of habeas and administrative law in evaluating PLRA exhaustion support that conclusion.
 
 [13]
 
 In its habeas jurisprudence, the Court has recognized an exception to the general rule of exhaustion "where the State has actually passed upon the claim," even if raised by the state court
 
 sua sponte.
 

 Castille v. Peoples
 
 ,
 
 489 U.S. 346
 
 , 351,
 
 109 S.Ct. 1056
 
 ,
 
 103 L.Ed.2d 380
 
 (1989) ;
 
 see also
 

 Mathias v. Superintendent Frackville SCI
 
 ,
 
 876 F.3d 462
 
 , 480 n.6 (3d Cir. 2017). In the administrative law context, it is also well settled that "when the agency in fact considers the issue on the merits, [the] general exhaustion requirement can be satisfied even if the party did not properly raise it,"
 
 Kennedy for President Comm. v. FEC
 
 ,
 
 734 F.2d 1558
 
 , 1560 n.2 (D.C. Cir. 1984), and as Justice Breyer expressly noted in his concurrence in
 
 Ross
 
 , the PLRA's exhaustion requirement "include[s] administrative law's 'well-established exceptions to exhaustion.' "
 
 Ross
 
 ,
 
 136 S.Ct. at 1863
 
 (quoting
 
 Woodford
 
 ,
 
 548 U.S. at 103
 
 ,
 
 126 S.Ct. 2378
 
 ) (Breyer, J., concurring) (citation omitted).
 
 Woodford
 
 thus does not require us to revisit
 
 Camp
 
 and
 
 Spruill
 
 , and, if anything, reinforces our conclusion that where a prison disregards its own procedures and rejects an inmate's otherwise procedurally defaulted complaint on the merits, the claim is "properly exhausted" under the PLRA.
 

 To be clear, and with sensitivity to the thoughtful concerns raise by our dissenting colleague, we do not today create any "broad ... exception" to the exhaustion requirement.
 
 See
 
 Dissent at 277. We simply reaffirm, as we held in
 
 Camp
 
 , that when an inmate's allegations "have been fully examined on the merits" and "at the highest level," they are, in fact, exhausted.
 
 219 F.3d at 281
 
 . This holding also satisfies the "three interrelated objectives" of exhaustion: "(1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the
 federal courts by erecting barriers to frivolous prisoner lawsuits." Dissent at 277 (quoting
 
 Spruill
 
 ,
 
 372 F.3d at
 
 230 ). That is, precisely because we recognize that control over the grievance process is appropriately vested in prison administrators and that such administrators are best positioned to ascertain the need for further development of the administrative record, we should not be second-guessing their decisions on the relative efficiencies of (a) rejecting a claim and requiring it to be re-initiated at the institution level, versus (b) opting to research it, to the extent needed, at the appellate level and addressing it on the merits. And when the prison chooses the latter course, as it did here, making clear with its merits decision what the inevitable result would be of a re-initiated claim, then treating the claim as exhausted does not increase "the burden on the federal courts."
 
 Spruill
 
 ,
 
 372 F.3d at 230
 
 . It simply avoids subjecting prisoners and prison administrators alike to a futile exercise and provides judicial review of the prison's final decision on the merits. In short, where the prison has chosen to forgo a rejection on procedural grounds and has elected to research, analyze, and deny a claim on the merits, both the purposes of exhaustion-and exhaustion itself-are satisfied.
 

 In reaching this conclusion, we are in good company. Other Courts of Appeals too have held that merits review satisfies exhaustion under the PLRA and that, because PLRA exhaustion turns on the remedies and grievance procedures that the particular prison has available, treating a claim as exhausted where a prison chooses not to enforce those procedures does not contravene the PLRA.
 
 See
 

 Reyes v. Smith
 
 ,
 
 810 F.3d 654
 
 , 657 (9th Cir. 2016) ;
 
 Whatley v. Warden, Ware State Prison
 
 ,
 
 802 F.3d 1205
 
 , 1215 (11th Cir. 2015) ;
 
 Hammett v. Cofield
 
 ,
 
 681 F.3d 945
 
 , 947 (8th Cir. 2012) (per curiam);
 
 Maddox v. Love
 
 ,
 
 655 F.3d 709
 
 , 722 (7th Cir. 2011) ;
 
 Reed-Bey v. Pramstaller
 
 ,
 
 603 F.3d 322
 
 , 325 (6th Cir. 2010) ;
 
 Ross v. County of Bernalillo
 
 ,
 
 365 F.3d 1181
 
 , 1186 (10th Cir. 2004).
 
 [14]
 

 In sum, because Rinaldi's Assault Request was denied at the highest level on the merits and therefore was properly exhausted under the PLRA, we will vacate the District Court's dismissal of Rinaldi's Eighth Amendment claim.
 

 B. Rinaldi's FTCA Claim
 

 The District Court construed Rinaldi's claim that the Government "forc[ed] him to reside with an inmate that [the BOP] knew, or should have known, had expressed an intention to kill [him],"
 
 Rinaldi
 
 ,
 
 2015 WL 2131208
 
 , at *5, as "essentially a negligence" claim under the FTCA subject to dismissal on the basis of the discretionary function exception.
 
 [15]
 

 Id.
 

 We will affirm.
 

 The FTCA offers a limited waiver of the federal government's sovereign immunity from civil liability for negligent acts of government employees acting within the scope of their employment.
 
 Berkovitz v. United States
 
 ,
 
 486 U.S. 531
 
 , 536,
 
 108 S.Ct. 1954
 
 ,
 
 100 L.Ed.2d 531
 
 (1988) ;
 
 28 U.S.C. §§ 2671
 
 - 2680. However, it excludes claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty ... whether or not the discretion involved be abused."
 

 Id.
 

 § 2680(a). To determine whether a claim fails within this discretionary function exception, we apply a two-prong test.
 
 See
 

 United States v. Gaubert
 
 ,
 
 499 U.S. 315
 
 , 322,
 
 111 S.Ct. 1267
 
 ,
 
 113 L.Ed.2d 335
 
 (1991) ;
 
 Mitchell v. United States,
 

 225 F.3d 361
 
 , 363 (3d Cir. 2000). First, we ask whether the challenged conduct involved an "element of judgment or choice," which depends on whether there is a "federal statute, regulation, or policy [that] specifically prescribes a course of action for an employee to follow."
 
 Mitchell
 
 ,
 
 225 F.3d at 363
 
 (citation omitted). Second, if the act does involve judgment, we ask whether the judgment involved is "the kind that the discretionary function exception was designed to shield."
 

 Id.
 

 (citations omitted).
 

 Although we have not previously addressed in a precedential opinion whether BOP housing and cellmate assignments meet this test, other Courts of Appeals have held uniformly that they do.
 
 See
 

 Montez ex rel. Estate of Hearlson v. United States
 
 ,
 
 359 F.3d 392
 
 , 396-98 (6th Cir. 2004) ;
 
 Santana-Rosa v. United States,
 

 335 F.3d 39
 
 , 43-44 (1st Cir. 2003) ;
 
 Cohen v. United States,
 

 151 F.3d 1338
 
 , 1342 (11th Cir. 1998) ;
 
 Dykstra v. U.S. Bureau of Prisons,
 

 140 F.3d 791
 
 , 795-96 (8th Cir. 1998) ;
 
 Calderon v. United States,
 

 123 F.3d 947
 
 , 948-50 (7th Cir. 1997).
 
 [16]
 
 We now join them.
 

 Here, both prongs of the discretionary function test are satisfied. At the first prong, housing and cellmate assignments unquestionably involve an "element of judgment or choice,"
 
 Gaubert
 
 ,
 
 499 U.S. at 322
 
 ,
 
 111 S.Ct. 1267
 
 (citation omitted), for while BOP officials must "provide suitable quarters" and "provide for the protection, instruction, and discipline of all" of its inmates,
 
 18 U.S.C. § 4042
 
 (a)(2)-(3), neither that provision nor any other "federal statute, regulation or policy" can be said to "specifically prescribe[ ] a course of action" for such assignments that BOP officials must follow.
 
 Mitchell
 
 ,
 
 225 F.3d at 363
 
 (citation omitted). And at the second prong, "a prison's internal security is peculiarly a matter normally left to the discretion of prison administrators,"
 
 Rhodes v. Chapman
 
 ,
 
 452 U.S. 337
 
 , 350,
 
 101 S.Ct. 2392
 
 ,
 
 69 L.Ed.2d 59
 
 (1981), and "[p]rison administrators ... should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal
 order and discipline and to maintain institutional security."
 
 Bell v. Wolfish,
 

 441 U.S. 520
 
 , 547,
 
 99 S.Ct. 1861
 
 ,
 
 60 L.Ed.2d 447
 
 (1979). Thus, the District Court correctly concluded that housing and cellmate assignments are "of the kind that the discretionary function exception was designed to shield."
 
 Mitchell
 
 ,
 
 225 F.3d at 363
 
 (citation omitted).
 

 V. Conclusion
 

 For the foregoing reasons, we will vacate and remand for further proceedings concerning Rinaldi's First and Eighth Amendment claims and will affirm the District Court's judgment in all other respects.
 

 The District Court considered the Government's "Motion to Dismiss or, in the alternative, Motion for Summary Judgment," JA 68, as one "for dismissal primarily under Rule 12(b)(6),"
 
 Rinaldi v. United States
 
 ,
 
 2015 WL 2131208
 
 , at *1 n.1 (M.D. Pa. May 7, 2015), and accepted as true the factual allegations in Rinaldi's complaint. In dismissing Rinaldi's claims and entering judgment in the Government's favor based on an affirmative defense, the District Court relied in part on prison records and an affidavit and to that extent construed the Government's motion as one for summary judgment.
 
 Id.
 
 at *7-8, *19. As we have observed in past cases, where a defendant moves to dismiss based on a failure-to-exhaust defense and "the exhaustion issue turns on [ ] indisputably authentic documents related to [the inmate's] grievances," we may consider those documents "without converting [a motion to dismiss] to a motion for summary judgment,"
 
 Spruill v. Gillis
 
 ,
 
 372 F.3d 218
 
 , 223 (3d Cir. 2004), although different treatment may be warranted where the court considers other types of evidence,
 
 see
 

 Paladino v. Newsome
 
 ,
 
 885 F.3d 203
 
 , 208 (3d Cir. 2018) (affirming order on defendant's motion for summary judgment for failure-to-exhaust based on prison records and an affidavit without discussing when such a motion may be construed as a motion to dismiss). In any event, we likewise will accept Rinaldi's factual allegations as true for purposes of this appeal.
 
 See
 

 Bridge v. Phx. Bond & Indem. Co.
 
 ,
 
 553 U.S. 639
 
 , 642 n.1,
 
 128 S.Ct. 2131
 
 ,
 
 170 L.Ed.2d 1012
 
 (2008).
 

 As explained in greater detail below, an "informal resolution" is the first step that must be taken by an inmate in the Bureau of Prisons ("BOP") as part of its 4-step grievance process. The subsequent steps are the filing of a formal "request" at the institution, an appeal to the BOP Regional Director, and a final appeal to the General Counsel of the BOP.
 
 See
 

 28 C.F.R. §§ 542.13
 
 -.18.
 

 There is some ambiguity in the record as to whether Rinaldi took a further appeal of the rejection by the Regional Director to the General Counsel. However, the Government does not raise and thus has waived this issue as a basis for Rinaldi's failure to exhaust, instead resting its argument exclusively on Rinaldi's failure to refile the "Sensitive" request with the Institution.
 
 See
 

 United States v. Albertson
 
 ,
 
 645 F.3d 191
 
 , 195 (3d Cir. 2011).
 

 The assault by Cellmate #2 was "unrelated" to the assault by Cellmate #1 and thus was required to be filed as a separate grievance.
 
 28 C.F.R. § 542.14
 
 (c)(2) ;
 
 see
 
 id.
 

 § 542.15(b)(2).
 

 It appears that Rinaldi's further appeal to the General Counsel, though summarily denied, was also denied on the merits because the BOP database entry indicated a status code "DNY," meaning a "request or appeal denied substantially in full." JA 170, 179.
 

 Rinaldi also raised a claim pursuant to the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. §§ 2000bb
 
 et seq.
 
 , based on his inability to attend congregational prayer while housed in the Special Management Unit at Lewisburg, as well as a claim construed as a
 
 Bivens
 
 claim based on a violation of the Free Exercise Clause of the United States Constitution.
 
 See
 

 Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics
 
 ,
 
 403 U.S. 388
 
 ,
 
 91 S.Ct. 1999
 
 ,
 
 29 L.Ed.2d 619
 
 (1971) ;
 
 Rinaldi
 
 ,
 
 2015 WL 2131208
 
 , at *10, 16-17. The District Court dismissed Rinaldi's RFRA claim with leave to amend, explaining to Rinaldi that he was required to allege the personal involvement of each defendant, but Rinaldi declined to file an amended complaint and did not appeal the denial of his RFRA claim. Between the District Court's order and the filing of this appeal, we held in
 
 Mack v. Warden Loretto FCI
 
 ,
 
 839 F.3d 286
 
 , 305 (3d Cir. 2016), that
 
 Bivens
 
 did not extend to Free Exercise claims and Rinaldi concedes in his Reply brief in this appeal that
 
 Mack
 
 forecloses his
 
 Bivens
 
 claim. Rinaldi also requests for the first time in his Reply that, in view of
 
 Mack
 
 , we remand to give him the opportunity to amend his RFRA claim-the very opportunity he passed up when offered by the District Court. We will deny that request because "the courts of appeals will not consider arguments raised on appeal for the first time in a reply brief."
 
 Hoxworth v. Blinder, Robinson & Co.
 
 ,
 
 903 F.2d 186
 
 , 204-5 n. 29 (3d Cir. 1990) (citation omitted).
 

 While the District Court concluded, based on the discretionary function exception, that it "lack[ed] jurisdiction over Plaintiff's claims against the United States and all other Defendants in their official capacity,"
 
 Rinaldi
 
 ,
 
 2015 WL 2131208
 
 , at *6, it properly concluded that it had jurisdiction over Rinaldi's claims against the defendants in their individual capacities.
 
 See
 

 Jaffee v. United States,
 

 592 F.2d 712
 
 , 717 (3d Cir. 1979) ;
 
 Consejo de Desarrollo Economico de Mexicali, A.C. v. United States,
 

 482 F.3d 1157
 
 , 1173 (9th Cir. 2007) (noting that a
 
 Bivens
 
 action can be maintained against a defendant in his or her individual capacity only).
 

 It appears that there are two potentially applicable regulations-and, by extension, two applicable procedures-when a "Sensitive" request is rejected.
 
 See
 

 28 C.F.R. § 542.14
 
 (d) (governing "Sensitive" requests);
 

 id.
 

 § 542.17(c) (governing all rejections including "a rejection on the basis of [the] exception [for 'Sensitive' issues]"). We will assume for purposes of this appeal that those regulations required Rinaldi to refile at the Institution upon receipt of the rejection because Rinaldi himself adopts that position and raises no arguments to the contrary. We note, however, that § 542.17(c) is not a model of clarity, particularly when viewed together with § 542.14(d)(1). While § 542.14(d)(1) directs what inmates "shall" do after a "Sensitive" request is rejected, it also states that inmates "
 
 may
 
 pursue the matter by submitting an Administrative Remedy Request locally to the Warden," suggesting that refiling at the institution is a permissible alternative to direct appeal pursuant to § 542.17(c).
 

 Id.
 

 § 542.14(d)(1) (emphasis added). Similarly, § 542.17(c) provides that an "inmate may appeal [a] rejection," and specifically provides that the regulation covers rejections of "Sensitive" requests. As for § 542.17(c), the only qualifier to permission to appeal directly is that "the inmate is not given an opportunity to correct the defect and resubmit."
 

 Id.
 

 § 542.17(c). But it is not apparent what "defect" can be "correct[ed]" when an inmate in good faith believes that the request is indeed "Sensitive" and therefore warrants a direct appeal. Because, "under § 1997e(a), the warden is responsible for the grievance system ... he or she may alter the grievance system to require more (or less) of inmates by way of exhaustion,"
 
 Spruill
 
 ,
 
 372 F.3d at 235
 
 , and in view of the ambiguity in § 542.17(c), wardens and the BOP itself may wish to provide guidance.
 

 Given our conclusion that this circumstance falls within the third category described in
 
 Ross
 
 , we do not have occasion to address, as have some of our Sister Circuits, whether
 
 Ross
 
 's three categories are exhaustive or merely illustrative.
 
 See, e.g.
 
 ,
 
 Andres v. Marshall
 
 ,
 
 867 F.3d 1076
 
 , 1078 (9th Cir. 2017) (describing the three categories as "non-exhaustive");
 
 Williams v. Corr. Officer Priatno
 
 ,
 
 829 F.3d 118
 
 , 124 (2d Cir. 2016) (same).
 

 Indeed, federal courts are well accustomed to applying tests involving both an objective and subjective component in the prisoner litigation context.
 
 See, e.g.
 
 ,
 
 Hudson v. McMillian
 
 ,
 
 503 U.S. 1
 
 , 8,
 
 112 S.Ct. 995
 
 ,
 
 117 L.Ed.2d 156
 
 (1992) ;
 
 Ricks v. Shover
 
 ,
 
 891 F.3d 468
 
 , 473-74 (3d Cir. 2018).
 

 The Government's suggestion that the Assault Request was not "fully examined" on the merits, Appellee's Br. 21, is refuted by the Regional Director's decision, which addressed both assaults and concluded that the appeal was "denied" because "there is no record of [him] being assaulted by [his] previous
 
 or current cellmate.
 
 " JA 168 (emphasis added). As the Government acknowledges elsewhere in its brief, "denials" in contrast to "rejections," are "on the merits." Appellee's Br. 22-23.
 

 The Government appears of two minds on this point, as it indicated at oral argument that it "is not taking the position that ...
 
 Spruill
 
 or
 
 Camp
 
 are called into question by
 
 Woodford
 
 or
 
 Ross
 
 ," and that if this Court "conclude[s] that the Regional Administrator did address [Rinaldi's] ... Eighth Amendment assault claim [ ] on the merits that it's properly exhausted for purposes of Federal Court." Tr. of Oral Arg. 42:12-22. Having considered carefully whether
 
 Woodford
 
 and
 
 Ross
 
 alter our approach, we conclude they do not.
 

 Our dissenting colleague correctly observes that "the Supreme Court has not imported all [habeas and administrative law] principles" into PLRA exhaustion, and has rejected, for example, an analogy to the Antiterrorism and Effective Death Penalty Act's tolling provision. Dissent at 278 & n.6. But the Court's rejection of analogies to habeas and administrative law in rare and specific contexts only points up its reliance on them as a general matter to guide its PLRA exhaustion jurisprudence, and we see no reason to abjure that reliance here, particularly given the Court's approving citation to
 
 Spruill
 
 .
 

 The Dissent argues that "most of our sister circuits to consider the issue addressed grievances the substance of which had proceeded through each step of the administrative process," Dissent at 279, and, specifically, that the Ninth Circuit "qualified its holding on this point." Dissent at 279 (citing
 
 Reyes
 
 ,
 
 810 F.3d at
 
 658 ). But the fact that other Courts of Appeals have determined that exhaustion is satisfied when an otherwise procedurally-defaulted grievance is denied on the merits after having been adjudicated at each step of a grievance process does not speak to whether exhaustion is also satisfied when such a grievance is denied on the merits at the highest level of that grievance process. Moreover, the legal analysis underlying those decisions-namely, their focus on whether "[p]rison officials have had the opportunity to address the grievance and correct their own errors,"
 
 Reyes
 
 ,
 
 810 F.3d at
 
 657 -applies here with equal force. Here too, the BOP had the opportunity to adjudicate Rinaldi's claim in any way it saw fit, and opted to address it on the merits rather than direct him to comply with all levels of its 4-Step process.
 

 To the extent Rinaldi argues the discretionary function exception cannot apply because his allegations relate to unconstitutional acts, he fails to recognize the premise of the FTCA claim he seeks on appeal to reinstate: The FTCA only waives sovereign immunity for torts recognized under the law of the state in which the conduct was alleged to have occurred. Although Rinaldi referenced the Eighth Amendment, the District Court reasonably construed his claim as an FTCA claim, and it is that claim that Rinaldi now argues was erroneously dismissed.
 
 See
 

 Rinaldi
 
 ,
 
 2015 WL 2131208
 
 , at *5.
 

 Cf.
 

 Ashford v. United States,
 

 511 F.3d 501
 
 , 505 (5th Cir. 2007) (observing that the discretionary function exception generally applies to cellmate assignments when an inmate can "point to no specific prison policy or regulation that constrained prison officials' judgment other than the prison's general duty to protect its prison population," but conceding the exception did not apply in that case because "there [was] a specific policy in place that constrained the decision-making ability of the prison officials").