# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-2621
_____

Donald East

*Plaintiff - Appellant*

v.

Minnehaha County; Correct Care Solutions, LLC; Jean Heisler, MD; Linda
Osborne; Robert Dooley, Warden; Brian Foley; Michael Joe Hanvey; Bradley
Adams; John Does 1 and 2

*Defendants - Appellees*
_____

Appeal from United States District Court
for the District of South Dakota – Sioux Falls
_____

Submitted: October 21, 2020
Filed: January 26, 2021
_____

Before BENTON, SHEPHERD, and KELLY, Circuit Judges.
_____

BENTON, Circuit Judge.

Donald G. East sued Minnehaha County, Correct Care Solutions, LLC (CCS),
and other prison officials and healthcare providers under 42 U.S.C. § 1983. He
alleges deliberate indifference to his serious medical needs in violation of the

Fourteenth and Eighth Amendments. He also claims that two officers threatened him in violation of the Eighth Amendment.

The district court[1] granted one defendant's motion to dismiss. It granted summary judgment to the other defendants. ***East v. Minnehaha Cnty.***, 2019 WL 1434974 (D.S.D. Mar. 29, 2019). Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

East was incarcerated at the Minnehaha County jail from 2012 to 2014. He suffered a right-foot injury requiring medical attention. From April to August 2013, he received wound care almost daily from the jail's medical contractor, CCS. At least five nurse practitioners or doctors examined his foot and prescribed medications. In August, a doctor told East that his injury was more serious than she initially thought. In September, a small toe was amputated. He was placed in medical observation housing but suffered complications after surgery. He complained about his care, especially some delays in receiving pain medications and some poorly-administered intravenous treatment. In November, after recovering from the complications, he returned to the general population.

After trial and sentencing, East was transferred to Mike Durfee State Prison (MDSP) in April 2014. A year later, he reported pain in his foot. He was diagnosed with cellulitis. A later x-ray revealed a stress fracture that was healing. East used crutches and a controlled-ankle-motion boot during this time. A month later, his right foot was put in a cast. He then sprained his left ankle and wore a prescribed boot on his left foot. He had surgery to remove a bunion on his right foot in April 2016. Surgeons inserted five locking screws in his great-toe joint. East complained about difficulties with his foot. Physician assistant Bradley Adams saw East. Noting

---

[1]The Honorable Roberto A. Lange, United States District Judge for the District of South Dakota.

the great toe was "starting to deviate over the second toe," Adams ordered an x-ray for the foot surgeon to review. The initial x-ray was negative, but later x-rays revealed a fractured screw from the bunion surgery. In July 2017, East had another surgery to correct that.

Three months later, Adams told East he had sprained his right ankle. X-rays revealed a heel bone fracture. Treated with a cast and then a boot, the foot healed within five months. East alleges that MDSP officials: denied him timely access to medical care and use of a wheelchair; housed him in a non-air-conditioned unit after surgery against his doctor's recommendation; and provided a walking boot too big for his foot.

East's Eighth Amendment claims include two acts by two MDSP officers— Baker and Goins. He alleges that on a trip to the doctor, Baker secured his belly chain too tightly. When Baker asked if the chain was too tight, East said he could "barely breathe." Baker replied he should make the chain tighter. (East had no injury from the chain.)

East also alleges Baker brandished his firearm, warning: "Don't try to do anything East, cause I'll go John Wayne on your ass." What prompted this statement is unclear. East says Baker pointed his gun at him, showed him the gun's clip of ammunition, and said "I will shoot you, East." East alleges that another inmate told him that guards had retaliated against other prisoners for reporting similar threats. East never filed a formal complaint about these two acts, claiming to fear retaliation.

The district court granted Adams's motion to dismiss. It granted summary judgment to Minnehaha County, CCS, and the officials and healthcare workers. It also granted summary judgment to Baker and Goins, ruling East failed to exhaust administrative remedies under the Prison Litigation Reform Act (PLRA).

This court reviews de novo the grant of a motion to dismiss under Rule 12(b)(6), construing all reasonable inferences most favorably to the nonmoving

party. ***Retro Television Network, Inc. v. Luken Comms., LLC***, 696 F.3d 766, 768 (8th Cir. 2012).

This court reviews de novo the grant of summary judgment, viewing the facts most favorably to the nonmoving party. ***Torgerson v. City of Rochester***, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). This court affirms if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." **Fed. R. Civ. P. 56(a)**.

## II.

East alleges that Minnehaha County, CCS, and the officials and healthcare workers at both facilities were deliberately indifferent to his medical needs in violation of the Fourteenth and Eighth Amendments.

"In a deprivation of medical care case, the inmate must show (1) an objectively serious medical need; and (2) the defendants actually knew of the medical need but were deliberately indifferent to it." ***Jones v. Minn. Dep't. of Corrs.***, 512 F.3d 478, 481 (8th Cir. 2008). Negligence is not enough. ***Id.*** at 484. *See generally* ***Jackson v. Buckman***, 756 F.3d 1060, 1065 (8th Cir. 2014) (deliberate indifference standard applies to claims by pretrial detainees under the Fourteenth Amendment and convicted inmates under the Eighth Amendment).

## A.

Granting the motion to dismiss, the district court ruled that East's allegations were insufficient because he did not allege that Adams knew of and deliberately disregarded his serious medical needs. This court accepts East's factual allegations as true but not his legal conclusions. *See* ***Retro TV***, 696 F.3d at 768-69, *citing* ***Ashcroft v. Iqbal***, 556 U.S. 662, 678 (2009).

East makes only two allegations against Adams in his amended complaints. He alleges he was experiencing significant pain in his right foot, believed something was protruding from it, but Adams did not order further treatment. To the contrary, it is undisputed that Adams ordered x-rays, which East's surgeon reviewed. He also alleges an undisputed fact, that Adams told him his right ankle was sprained in October 2017.

On appeal, East insists that his medical history and July 2017 corrective surgery demonstrate that Adams knew he had serious medical needs and was deliberately indifferent. The amended complaints do not include these conclusions. He states only that Adams had "actual knowledge" of his serious medical needs. He does not plead "any additional facts to support this conclusory statement." *See* ***Retro TV***, 696 F.3d at 769.

The district court properly granted Adams's motion to dismiss.

B.

The district court granted summary judgment to the remaining defendants— including Minnehaha County, CCS, and other officials and healthcare providers— on the deliberate indifference claims.

East says his condition was initially misdiagnosed by CCS staff. He adds he was denied "timely access to medical care, adequate access to a wheelchair, air-conditioned housing to avoid infection, [and] a properly-fitting walking boot" while at MDSP. The facts here do not show deliberate indifference.

During his time at the Minnehaha County jail, East received "almost daily" wound care, including visits with treating doctors, "various specialists," surgeons, and hospitals. ***East***, 2019 WL 1434974, at \*5. While acknowledging some delays in treatment, the district court properly concluded these were, at worst, negligent. *Id.* at \*20. This is also true during his time at MDSP.

East's claims are a "mere disagreement with treatment decisions." *See Langford v. Norris,* 614 F.3d 445, 460 (8th Cir. 2010). They do not approach "criminal recklessness." *See McCaster v. Clausen*, 684 F.3d 740, 746 (8th Cir. 2012).

The district court properly granted summary judgment on East's deliberate indifference claims.

III.

An inmate may not sue under federal law until exhausting available administrative remedies. **42 U.S.C. § 1997e(a)**. Administrative remedies are not available if "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 136 S. Ct. 1850, 1860 (2016). The inmate then is not required to exhaust his claims before suing in federal court. *Id.*

Other circuits differ on the test to determine whether a fear of retaliation excuses an inmate from exhaustion requirements. *Compare Rinaldi v. United States*, 904 F.3d 257, 269 (3d Cir. 2018) (requiring inmate to show subjective and objective elements: that the threat actually deterred filing a grievance and that a reasonable inmate of ordinary firmness would have failed to file it), *and McBride v. Lopez*, 807 F.3d 982, 987-88 (9th Cir. 2015) (same), *and Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011) (same), *and Turner v. Burnside*, 541 F.3d 1077, 1085 (11th Cir. 2008) (same), *with Hemphill v. New York*, 380 F.3d 680, 688 (2d Cir. 2004) (requiring inmate to show only the objective element: that a reasonable inmate of ordinary firmness would have failed to file a grievance), *abrogated on other grounds by Ross*, 136 S. Ct. at 1862, *and Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006) (implicitly adopting the objective test).

Under either test, East's claims fail because he cannot show that a reasonable inmate of ordinary firmness would have failed to file a grievance in his situation.

"[T]here must be some basis in the record from which the district court could determine that a reasonable prisoner of ordinary firmness would have understood the prison official's actions to threaten retaliation if the prisoner chose to utilize the prison grievance system." *McBride*, 807 F.3d at 988. *See also* *Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 313 (2d Cir. 2020) (inmate did not demonstrate any connection between alleged violence against other inmates and filing a grievance).

A reasonable inmate would not have understood Baker's threats to relate to the grievance process. "[T]he threat need not explicitly reference the grievance system in order to deter a reasonable inmate from filing a grievance," but here Baker's statements are not connected to the grievance system at all. *See* *McBride*, 807 F.3d at 988. A hostile interaction with a guard, without more, does not excuse exhausting the grievance process. *Id.* *See also* *Lucente*, 980 F.3d at 312.

To show he feared retaliation, East also says that another inmate told him that others had been subject to threats for reporting incidents with guards. Even if true, the statement was not specific enough to give East any meaningful information. *See* *Rodriguez v. Cnty. of Los Angeles*, 891 F.3d 776, 794 (9th Cir. 2018) ("general and unsubstantiated fears about possible retaliation" are not enough to excuse exhaustion); *Sealey v. Busichio*, 696 Fed. Appx. 779, 781 (9th Cir. 2017) ("The objective prong rests on the actions of officials, not on statements of other prisoners."); *Singh v. Lynch*, 460 Fed. Appx. 45, 47-48 (2d Cir. 2012) (other inmates' warnings to plaintiff that guard was out to get him lacked enough "particulars" to excuse exhaustion).

The district court properly granted summary judgment to Baker and Goins.

\* \* \* \* \* \* \*

The judgment is affirmed.

_____